### PECK v. KINNEY.

(Circuit Court of Appeals, Second Circuit. October 11, 1905.)

No. 233.

1. WILLS—INCOME—ANNUITY.

An annuity is a stated sum payable annually or a yearly payment of a certain sum of money granted to another in fee for life or for years, and is distinguished from a bequest of income in that the latter embraces only the net profits after deducting all necessary expenses and charges while the annuity is payable absolutely and without contingency.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 1436, 1437.]

2. INTERNAL REVENUE—INHERITANCE TAX—ANNUITY OR INCOME.

Where testator created two trusts aggregating $400,000, and provided that the trustee should from time to time, as often as once in six months, pay from the trust including accumulations of income as well as the then corpus of the fund, at the rate of $14,000 per year in equal proportions to testator's widow and his three children or their descendants per stirpes, such $14,000 was a fixed sum to be paid to a class and to the surviving members thereof in case of the death of a daughter without issue, so that the bequest was taxable as an annuity and not as a bequest of income, as provided by War Revenue Act June 13, 1898, c. 448, § 29, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2307].

In Error to the Circuit Court of the United States for the District of Connecticut.

For opinion below, see 128 Fed. 313.

W. R. Tillinghast, for plaintiff in error.

F. H. Parker, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Walter A. Peck, late of Providence, R. I., died May 31, 1901, leaving a will in which he appointed plaintiff, his widow, executrix, and provided for the creation of two

trusts, which in the disposition of this case may be treated as one, aggregating $400,000. Said will provided, as to each trust, as follows:

"The trustee for the time being shall from time to time as often as once in each six months during the continuance of this trust pay out from the then trust funds and property (including accumulations of income as well as the then corpus of the estate) at the rate of $7,000 per year until the principal or corpus of said trust estate and property as well as all accumulations of income have been exhausted.

"During the lifetime of my wife if she survives me, she is to receive the same fractional share of each of said payments as would be payable to her upon an equal division of said payments between herself and my children living or represented by living issue at the time of such payments respectively. For example, if my family consists of its present members, one fourth to her, but if at my death or at any time during the term of her life either of my children should die leaving no issue surviving or the issue of any deceased child should all die, the fractional share of my wife is to be increased, from and after such occurrence to make her payments equal to that of each of my children then living. And if my wife survives me, and at my death or at any time during her life neither of my children nor any issue of theirs is surviving, the whole of said payments shall be made to her as they respectively become due and payable during the term of her life.

"At all times during the continuance of these trusts the child, children or descendants living at the time, of any child of mine that has previously deceased are to receive (per stirpes) the share of income that would have been payable to such child of mine under this will if such child was then living, and I expressly include in all the provisions of this will any child or children of mine hereafter born whether in my life time or not as well as my children now living. From and after my decease if I survive my wife, the whole of said payments as they become payable shall be paid to the same persons that would inherit real estate from me under the present laws of the state of Rhode Island had I then died intestate and in the same proportions that they would inherit such real estate from me.

"And from and after the decease of my wife if she survives me, the residue of said payments not due and payable to her as aforesaid shall be paid to the same persons that would inherit real estate from me under the present laws of the state of Rhode Island had I then died intestate, and in the same proportions that they would inherit such real estate from me."

The two provisions for the payment of $7,000 each may be considered as a provision for one payment of $14,000 per year or at the rate of 3½ per cent. on said principal. It is agreed that for the purpose of the questions herein the will may be interpreted as providing for a continuance of the trusts during the lives of testator's three daughters and the survivors and survivor of them, and, as there was no other disposition of the principal of the trust funds, that the remainder after the trusts have terminated vested in plaintiff under the residuary clause. The testator left surviving him the plaintiff (his widow) and three daughters of the ages respectively of 20, 18, and 17 years, and, as the will provided for the equal division annually between the widow and daughters of $14,000 ($7,000 from each of the trusts), the plaintiff, as executrix, returned as taxable $3,500 per annum against each one of the daughters—her own share of the annual payments, as well as the residue of the estate, being exempt under the statute—and paid the tax upon that basis to the United States government under the war revenue act of 1898. The Department of Internal Revenue claimed and assessed under said act and that of June 27, 1902, against each of the daughters because of the possibility of

their surviving their mother a further tax equal to one-third of the value of a life interest in plaintiff amounting to $163.11, which she paid under protest. The claim under which said liability was asserted and said payment was made has been decided adversely to the government by the Supreme Court of the United States in Vanderbilt v. Eidman, and as to this amount it is admitted that judgment should be rendered in favor of plaintiff. The Department further claimed that under said trust provisions each daughter took a life estate in an undivided one-fourth part of said fund of $400,000, and accordingly assessed taxes under said revenue act "as though each of said daughters was entitled to one-fourth part of the income of said trust funds, calculated upon the basis of 4 per cent. instead of being entitled to an annuity as returned by this plaintiff," which assessment the plaintiff also paid under protest, claiming that the amounts of $3,500 each payable to the daughters under said trust provisions were annuities and only taxable as such under said act. The difference between the amount of taxes claimed by plaintiff herein to be due and the amount collected by the government is $477.67, and the plaintiff thereupon brought this action against the collector of internal revenue to recover said difference. The defendant demurred to the complaint on the ground already stated, namely, that the daughters each received a life estate, and that the interest of each daughter was valued "in the form and manner prescribed for the valuation of life estates by the commissioners of internal revenue, in regulations and instructions promulgated under date of December 16, 1898, pursuant to the act of Congress." The court sustained the demurrer.

The "regulations and instructions" referred to contain two different provisions, one for the valuation of life estates, and one for the valuation of annuities. The questions of law, therefore, are whether the daughters took a life estate or an annuity, and whether the Department has properly applied its regulations and instructions.

The provisions of section 29 of the War Revenue Act of June 13, 1898, c. 448, 30 Stat. 464, as amended by Act March 2, 1901, c. 806, § 10, 31 Stat. 946 [U. S. Comp. St. 1901, p. 2307], pertinent to the issues herein, are as follows:

"Sec. 29. That any person or persons having in charge or trust as executors * * * any legacies arising from personal property * * * passing after the passage of this act from any person possessed of such property * * * by will * * * to any person or persons * * * in trust or otherwise, shall be, and hereby are, made subject to a duty or tax to be paid to the United States as follows: That is to say—where the whole amount of said personal property shall exceed in value ten thousand dollars, and shall not exceed in value the sum of twenty-five thousand dollars, the tax shall be: where the person or persons entitled to any beneficial interest in such property shall be the lineal issue * * * to the person who died possessed of such property, as aforesaid, at the rate of seventy-five cents for each and every hundred dollars of the clear value of such interest in such property. * * * And where the amount or value of such property shall exceed the sum of twenty-five thousand dollars, but shall not exceed the sum or value of one hundred thousand dollars, the rates of duty or tax above set forth shall be multiplied by one and one-half." Chapter 448, 30 Stat. 464; chapter 806, § 10, 31 Stat. 946 [U. S. Comp. St. 1901, p. 2307].

"Sec. 30. That the tax or duty aforesaid shall be due and payable in one

year after the death of the testator and shall be a lien and charge upon the property of every person who may die as aforesaid for twenty years, or * * * until fully paid to and discharged by the United States; * * * and every executor * * * before payment and distribution to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector or deputy collector of the district of which the deceased person was a resident, * * * the amount of the duty or tax assessed upon such legacy." Chapter 448, 30 Stat. 465; chapter 806, § 11, 31 Stat. 948 [U. S. Comp. St. 1901, p. 2308].

By the "regulations and instructions" of the Internal Revenue Department the clear value of such interest is determined by a table furnished by the Department and based on the Actuaries' or Combined Experience Table, estimating money as worth 4 per cent. per annum. This table is headed as follows:

### Legacy Taxes.

Table, single-life, 4 per cent., showing the present worth of an annuity, or life interest, and of a reversionary interest, with explanatory notes and examples.

#### (United States Internal Revenue Adjustment, 1898.)

| Age. | Mean redemption period. | Annuity, or present value of one dollar due at the end of each year during the life of a person of specified age. | Reversion, or present value of one dollar due at the end of the year of the death of a person of specified age. |
|---|---|---|---|

Then follow the figures for different ages from 10 to 100 years, and the following illustrative examples:

#### "Example 1.

"A person dying bequeaths to his nephew an annuity of one thousand dollars during life. What is the present value of the annuity?

"Reference to the foregoing table shows that the present value of one dollar a year, payable at the end of each year during the life of a person aged forty years, is fifteen dollars nine cents two mills and ninety-five one hundredths of a mill ($15.09295); therefore, the present value of one thousand dollars is one thousand times as much, or fifteen thousand and ninety-two dollars and ninety-five cents, the amount upon which tax accrues.

#### "Example 2.

"A person dying bequeaths to his daughter, aged thirty-five years, a life interest in personal property amounting to fifty thousand dollars ($50,000), the estate to revert absolutely at her death to other parties. Required the present value, at the date of death of the testator, of the life interest of the daughter in the estate; also, required at the same date, the present value of the reversionary interest of said other parties in the estate.

"At a net interest of four per cent. per annum, the assumed rate, the estate of $50,000 will realize an income or annuity of $2,000 per annum. The present value of the sum of $1.00, payable at the end of each year during the life of a person aged thirty-five years, is found by the table to be $16.-14437, and the present value of an annuity of $2,000 for the same time would be two thousand times as much, or $32,288.74, the amount upon which tax accrues."

The plaintiff followed the rule illustrated by the first example for fixing the value of an annuity on the theory that each of the daughters took a fixed annual amount or annuity, with the result that the annuity amounted to 3½ per cent. per annum of the principal. The Department followed the rule illustrated by the second example, and calcu-

lated 4 per cent. on the principal, on the theory that each daughter was entitled to one-fourth of the income of said trust estate.

There is this distinction between income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges; the latter is a fixed amount directed to be paid absolutely and without contingency. Ex parte McComb, 4 Bradf. Sur. (N. Y.) 151, 152. "An annuity is defined as 'a stated sum, payable annually' (Pearson v. Chace, 10 R. I. 455), or as 'a yearly payment of a certain sum of money granted to another in fee, for life, or for years.' Kearney v. Cruikshank, 117 N. Y. 95, 22 N. E. 580; Bartlett v. Slater, 53 Conn. 102, 22 Atl. 678, 55 Am. Rep. 73." Goodyear Shoe Machinery Co. v. Dancel, 119 Fed. 692, 56 C. C. A. 300. It is a grant of a certain sum of money payable at the expiration of fixed, consecutive periods, for a definite term or for life. Lumley's Law of Annuities, 1.

In Booth v. Ammerman, 4 Bradf. Sur. 129, cited in Re Dewey, 153 N. Y. 63, 67, 46 N. E. 1039, and approved in Welsh v. Brown, 43 N. J. Law, 37, a bequest was of the interest upon a certain sum payable annually. The court said, referring to the bequest, as follows:

"It is not a stated sum, but may be more or less, according to the earnings of the capital. In this respect it does not possess the characteristics of an annuity, but is merely interest or income. * * * The thing given is the profits of a certain portion of the estate, to be separated in money and invested."

A life estate or legacy for life is the income or interest of a certain fund consisting of profits to be earned, which income is uncertain in amount. It is not a fixed sum, nor to be made a sum certain. Pearson v. Chace, 10 R. I. 455; Whitson v. Whitson, 53 N. Y. 479.

Counsel for the government argues that the provisions in question do not create an annuity because, inter alia, the payments are not to be made in a single sum, and no definite sum is necessarily to be paid to any beneficiary. But the amount of $14,000 is fixed, and is to be paid to a class and to the surviving members thereof, in case of the death of a daughter without issue. The essential element is the certainty of the amount to be paid periodically at a certain rate per annum or in a certain aggregate annual amount. It is immaterial that the periods for the payment may be distributed through the year. Warren v. Gregg, 116 Mass. 304; Bates v. Barry, 125 Mass. 83, 28 Am. Rep. 207.

Counsel for the United States further argues that, if the provisions made for a daughter were an annuity, death would terminate it. The definitions cited above show that it is not essential, to constitute an annuity, that it should be for the life of the individual beneficiary. This court had occasion to consider this question incidentally in Goodyear Shoe Machinery Company v. Dancel, supra, and there held that "It is only when there is no explanatory language as to its duration that an annuity is limited to the life of the annuitant," but that where the grant of an annual sum is made with words of limitation, such words of limitation fix its duration.

All the pertinent provisions of this will indicate an intention to

create a joint tenancy and an annuity. The amount to be annually paid is a fixed sum, $14,000. In no event can the beneficiaries receive more than this sum, whatever the annual income may be, and, on the other hand, the testator provides for a practical guaranty of this amount by permitting the trustee to appropriate from "the principal or corpus of said trust estate and property, as well as all accumulations of income," sufficient to secure the payment of said sum of $14,000, until the whole estate has been exhausted. The effect of adopting the construction contended for by the United States would be to impose a tax on an assumed income of 4 per cent. from the principal fund, on the basis established by the internal revenue regulations, when the actual income is fixed at $3,500 or only 3½ per cent.

The judgment of the Circuit Court sustaining the demurrer is reversed, with costs, and the case is remanded to the court below with instructions to enter a judgment for plaintiff for $477.66, with interest and costs, unless upon sufficient cause shown the court below sees fit to give defendant leave to answer.