## WILKIN v. BOARD OF COUNTY COM'RS OF OKLAHOMA COUNTY.

No. 9423—Opinion Filed Oct. 14, 1919.

Rehearing Denied Jan. 13, 1920.

(Syllabus by the Court.)

**1. Annuities—Definition.**

An annuity is a yearly payment of a certain sum of money granted to another in fee, for life, or for years, and chargeable only on the person of the grantor. But the term is often used in a broader sense as designating a fixed sum, granted or bequeathed, payable periodically but not necessarily annually.

**2. Taxation—Annuities—Situs.**

By the terms of an installment certificate issued by the New York Life Insurance Company in exchange for a policy, which had become a valid claim by the death of the insured, the company obligated itself to pay the beneficiary, a resident of the state of Oklahoma, certain semi-annual payments for a stated period, and thereafter on a date certain, a final payment of a specified sum. Held: (1) That said certificate was subject to taxation as an annuity under the laws of the state of Oklahoma. (2) That for the purpose of taxation the situs of the obligation thus created follows the domicile of the annuitant.

**3. Same—Assessment—Valuation.**

Section 8, article 10, William's Constitution, provides that "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

**4. Same—Value of Annuities.**

Record examined, and held, that the prevailing discount of 8 per cent. is an equitable basis for ascertaining the fair cash value of the certificates herein involved.

Error from County Court, Oklahoma County; William H. Zwick, Judge.

Appeal from taxation proceedings to the county court. From the judgment J. L. Wilkin, as guardian for Luther Jones, brings error. Modified and affirmed.

W. F. Wilson, of the firm of Wilson, Tomerlin & Buckholts, for plaintiff in error.

H. B. Hopps and Rollin E. Gish, for defendants in error.

KANE, J. This is an appeal from the action of the county court of Oklahoma county in an appeal taken from a certain proceeding had before the county treasurer at the instance and upon the application of the tax auditor of said county.

It seems that in the year 1911 the father of the appellant, Luther Jones, died leaving two policies of insurance in the New York Life Insurance Company, in which the appellant was named as beneficiary. The guardian of the appellant, who at the date of the death of his father was a minor, surrendered the policies and received from the company two installment certificates identical in form, except as to their number and the number of the policy upon which each certificate was issued. One of these certificates, which will serve as a model for both, reads as follows:

"The New York Life Insurance Company.
"Installment Certificate No. 152.

"The New York Life Insurance Company, in accordance with the provisions of Policy No. 3446878, issued by said company on the life of Charles G. Jones, of Oklahoma City, Oklahoma, which policy has become a claim by the death of said Charles G. Jones, and is surrendered to said company in exchange for this certificate,

"Agrees to pay to Luther Jones, a son of said Charles G. Jones, deceased, at the home office of said company, in the city of New York,

"First. Forty semi-annual payments of One Hundred Twenty-five Dollars each, the first payment to be made May fourth, Nineteen hundred and Eleven, and the subsequent payments semi-annually thereafter, one on each November fourth and May fourth thereafter, until forty semi-annual payments in all shall have been made, and,

"Second. A final payment of Five Thousand Dollars on May fourth, Nineteen Hundred and Thirty-one.

"If said Luther Jones shall die before all the payments hereinabove specified shall have been made, the balance of said payments shall be discounted at the rate of three per cent. interest, compounded semi-annually, and paid in one sum to the executor or administrator of said Luther Jones.

"This certificate shall cease and determine upon the payment of the final payment aforesaid, and shall be surrendered to said company.

"In witness whereof, the New York Life Insurance Company has caused this certificate to be signed by its vice president and secretary, countersigned by its registrar, and delivered this fourth day of May, One Thousand Nine Hundred and Eleven."

The questions involved in this appeal are: (1) Are these installment certificates taxable under the laws of this state; and (2) if taxable, what is their true valuation for purposes of taxation? The trial court held that the certificates were taxable and found their valuation for the years assessed to be as follows:

| "Year Assessed. | Valuation. | Rate Per Thousand. | Amount of Tax. |
| --- | --- | --- | --- |
| 1912 | $12,904.00 | $20.75 | $267.77 |
| 1913 | $12,788.00 | $20.00 | $255.78 |
| 1914 | $12,670.00 | $18.30 | $231.88 |
| 1915 | $12,584.00 | $22.50 | $282.33" |

Counsel for the appellant contends:

"First. That the certificates issued by the New York Life Insurance Company to the minor, beneficiary on the policies of insurance, had no present value, not being capable of being sold, assigned or trafficked in any manner, and were therefore not property in the sense of an annuity taxable under the laws of the state of Oklahoma.

"Second. That the money evidenced by said certificates to be paid was and continued to be until payment of each installment the property of the New York Life Insurance Company, and did not constitute property in the hands of the minor or his guardian.

"Third. That the moneys that should finally be applied to the satisfaction of said certificates had no situs for taxation within the state of Oklahoma, and remained at all times in the state of New York.

"Fourth. That the taxes so assessed against the certificates were confiscatory, resulting in the creation of the state of Oklahoma and its municipal divisions as the real beneficiary under the policies of insurance, instead of the minor named therein as beneficiary."

We are unable to agree with counsel as to the taxability of these certificates by the state.

Section 7302, Rev. Laws 1910, provides that all property in this state, whether real or personal, shall be subject to taxation, and section 7305, Rev. Laws 1910, in classifying personal property for purposes of taxation, expressly mentions annuities as a proper subject for taxation. The same section excludes from taxation particular classes of annuities, such as, pensions from the United States or any other state, etc. The first paragraph of section 7311, Rev. Laws 1910, prescribing how personal property shall be listed for taxation, provides that:

"Every person of full age and sound mind, being a resident of the state, shall list all his moneys, credits, bonds, shares of stock or joint stock of other companies or corporations (when the property of such company or corporation is not assessed in this state) moneys loaned or invested, annuities, franchises, royalties and other personal properties."

The third paragraph of the same section provides:

"The property of a minor child or insane person shall be listed by his guardian or by the person having such property in charge."

It seems to us that there can be little doubt that these certificates are personal property and that they fall within one of these specific statutory classifications of personal property. In our judgment these certificates resemble very closely pure annuities and are taxable as such under foregoing statutes. In its technical meaning an annuity is defined as a yearly payment of a certain sum of money granted to another in fee, for life, or for years, and chargeable only on the person of the grantor. 3 C. J. 200. But the term is often used in a broader sense as designating a fixed sum, granted or bequeathed, payable periodically but not necessarily annually. 3 C. J. 200.

In the case at bar there is a specific sum stipulated to be paid periodically at stated times for a term of years; and by the terms of the contract between the parties the sum to be paid constitutes a personal obligation chargeable against the insurance company, which is not payable out of any specific fund.

The certificates provide in effect that:

"In consideration of the surrender of the matured policy the insurance company shall pay to the beneficiary the first forty semi-annual payments, etc., and a final payment of $5,000.00 on a specific future date."

It is evident, therefore, that the certificates were accepted in lieu of the money due on the matured policies and that the payments provided for constituted a direct charge against the insurance company, which was not payable out of any specific fund.

In this regard the case resembles very closely the case of Jean Chisholm v. Hoseph C. Shields, Treas. Cuyahoga County, Ohio, 21 O. C. C., 231, which was an action brought for the purpose of enjoining the treasurer from the collection of taxes assessed against certain property bequeathed to the plaintiff in lieu of dower.

After defining an annuity as above, the court held that:

"Under a will bequeathing to testator's wife 'in lieu of all dower, the sum of $8,000.00 annually for and during the term of her natural life,' with directions to pay the legacy in quarterly installments, with the further provision 'for the payment of my wife's legacy I desire that a sufficient amount of my personal estate, either of stocks, bonds or money, shall be used to purchase government bonds, or equally good bonds, of such amount that the interest therein shall be sufficient to pay the quarterly installments of $2,000.00,' if accepted by the widow, creates a pure annuity."

If, as we have seen, an annuity is merely a personal obligation to pay a certain sum of money by installments at stated times, the property in the same follows the situs of the owner's domicile, under the general rule that for purposes of taxation a debt has its situs at the residence of the creditor, and the state where the creditor lives has power to tax it. Kritland v. Hotchkiss, 100 U. S. 491; Horne v. Green, 52 Miss. 452; Thomas v. Mason

County, 37 Ky. 135; Dykes v. Lockwood, 43 Pac. 268.

Having reached the conclusion that the obligation created by these certificates is taxable under the laws of this state, the next question for review is the action of the trial court in fixing the value thereof for that purpose.

Upon the trial the court heard the testimony of T. J. McComb, who, after qualifying as an expert actuary, testified that the semi-annual installments payable in the manner prescribed by the terms of the certificates and the $5,000.00 payable at the end of the installment period would have a present value based upon a three per cent. discount basis for each of the years for which taxes were claimed. This resulted in the valuations disclosed by the table hereinbefore set out. The record discloses that undoubtedly this estimate was based upon a clause contained in each certificate which reads:

"If said Luther Jones shall die before all the payments hereinbefore specified shall have been made, the balance of said payments shall be discounted at the rate of three per cent. interest, compounded semi-annually, and paid in one sum to the executor or administrator of said Luther Jones."

There was evidence tending to show that the prevailing rate of discount in this jurisdiction was 8 per cent. The contention is made that in determining the value of these certificates for the purpose of taxation the prevailing rate of discount would form a more accurate basis for computation than the rate of discount fixed by contract between the parties as a basis of settlement in case of the death of the beneficiary. We think this contention is well taken.

We have no means of ascertaining what considerations induced the parties to agree upon a three per cent. discount as a basis for settlement in the event of the death of the beneficiary, but we are satisfied that whatever they were they would not be helpful in fixing the fair cash value of the certificates for purposes of taxation.

Section 8, art. 10, Williams' Constitution, provides that:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

It is conceded by the parties that if these certificates were taxable, their valuation should be determined upon a reasonable discount basis, the state contending for a three per cent. basis and the appellant for the prevailing discount of eight per cent. As between these discounts we think it is quite apparent that the prevailing discount of eight

per cent. would be not only a more accurate basis for determining the fair cash value of the certificates, but would more nearly approximate justice between the taxing power and the taxpayers.

The witness McComb, who was conceded to be an expert actuary and insurance attorney, testified that the certificates discounted on an eight per cent. basis would have a present value in 1912 of $3,559.26 each; in 1913 of $3,594.23 each; in 1914 of $3,531.75 each; and in 1915 of $3,672.23 each. This, it seems to us, would place the taxation of these certificates upon a more equitable and just basis than the plan adopted by the trial court. Under the latter plan, as will be seen by reference to the table hereinbefore set out, the state would receive each year in the form of taxation a greater portion of the sums payable under the terms of the certificates than the beneficiary named therein. This exorbitant rate of taxation would be not only unfair to the appellant, but would ten to greatly depreciate the fair cash value of the certificates either upon the market or for purposes of taxation.

For the reasons stated, the judgment of the court below will be modified in the respects herein indicated, and, as thus modified, affirmed.

All the Justices concur, except McNEILL, J., not participating.