UNITED STATES ex rel. ANTONINI v. CURRAN, Commissioner, etc.

(Circuit Court of Appeals, Second Circuit. November 3, 1926.)

No. 25.

1. Aliens ⟨⟩49—Nonquota immigrant, as student, held entitled to admission, although having but $12, where father was able and willing to give aid (Immigration Act 1924, § 4, subd. [e], being Comp. St. § 4289¾b).

Nonquota immigrant, under Immigration Act 1924, § 4, subd. (e), being Comp. St. § 4289¾b, as student, *held* entitled to admission, although having but $12, where father, subject to deportation himself, intended to give him aid and was able, with aid of another son, to earn livelihood and contribute to student's support.

2. Aliens ⟨⟩53—Rule that student nonquota immigrant shall be deported, if engaging in business for profit, held inapplicable to students gaining maintenance and tuition by labor (Immigration Act 1924, § 4, subd. [e], being Comp. St. § 4289¾b).

Immigration Rules, rule 9, subd. D, providing that nonquota immigrant student under Immigration Act 1924, § 4, subd. (e), being Comp. St. § 4289¾b, engaging in business for profit or labor for hire shall be deported, *held* not to apply to students gaining their maintenance and tuition by self-supporting labor.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Habeas corpus by the United States, on the relation of Guido Antonini, against Henry H. Curran, as Commissioner, etc. Order dismissing the writ, and relator appeals. Reversed, with directions.

Gaspare M. Cusumano, of New York City, for appellant.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before MANTON, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge. Relator, an Italian, arriving September 2, 1925, then 19 years of age, was ordered excluded, despite his nonquota consular visa, on the ground that he was not a nonquota immigrant, within section 4, subdivision (e), of the Immigration Act of 1924 (Comp. St. § 4289¾b), as one "who is a bona fide student at least 15 years of age and who seeks to enter the United States solely for the purpose of study at an accredited school, college, academy, seminary, or university, particularly designated by him and approved by the Secretary of Labor." The record of the hearing before the Board of Special Inquiry presents no conflict, and concededly establishes that relator was a graduate of a technical institute in Italy and had been granted admission as a student at Columbia University; that, while he had but $12 in money upon arrival, he expected his father to pay his tuition and otherwise support him.

The father testified that he had $50 savings, earned $30 per week, out of which he supported himself and wife, who was in Italy; that he had come to this country about two years before as a seaman, deserted his ship, and had not been inspected by the immigration authorities or paid his head tax;

that relator's older brother lived with the father, and that he had likewise deserted the ship upon which he came over. This son is employed as a machinist.

[1] The father further testified that he could pay relator's tuition and support the family in the meantime, because his other son helped him, and that he did not expect relator "to help himself to earn anything. There will be no need for him doing so, because myself and the other son will be sufficient."

Relator's testimony was to the effect that he had come "to attend Columbia University and to remain here until my studies are completed." As to the time: "I am not sure, 3 or 4 years."

"Q. Upon graduation, what do you expect to do? A. If possible, to remain here; otherwise, I will return.

"Q. Didn't the American consul inform you that on the completion of your studies that you must return to Italy? A. Yes.

"Q. Is it your intention to do so? A. Yes.

"Q. Who will pay for your tuition? A. My father

"Q. Where will you reside during your studies? A. With my father.

"Q. Do you expect to perform any duty here? A. No."

The specific reason for excluding him as not having the nonquota status is not stated. In dismissing the writ of habeas corpus, the district judge expressed the opinion that, to be a bona fide student, the alien must not only intend to become a student at an approved university, but he must be "able so to do, and that the means necessary for his tuition and support are possessed by him, or that it can reasonably be inferred from the circumstances of those who are in such relationship, responsible for his support and tuition, that the means necessary therefor will be supplied by them." He held that "it cannot be said that it had been arranged in good faith that he was to be a student, because it is not shown that he and his father combined had sufficient funds to continue him as a student, if he became one, or in fact that either his father or brother would be allowed to remain in this country and aid him to continue."

We cannot concur in these views. Even though the father and brother were subject to deportation, each of them was able to earn a livelihood as a sailor, and from his earnings contribute something to relator's support and tuition; moreover, no attempt had been made to deport them. But we cannot accede to the view that a healthy student of 19 must, at the time of admission, have available money resources to complete his education in order to be a bona fide student immigrant. The history of educational institutions, especially that of the larger universities, affords conclusive evidence that the earnest student can work his way through college, if he is ready to make sacrifices and to engage in any kind of occupation while pursuing his studies, and none are more eager or willing to do this than these aliens with extremely limited or no outside financial resources. Indeed, in some colleges, like Antioch, the alternating of periods of work outside of the college with periods of academic study within the college is deemed not only a means of self-support during the college years, but a fundamental principle of education. Despite work of this kind during the time of study or in vacation, the man is and remains a bona fide student.

[2] Subdivision D of rule 9 of the Immigration Rules promulgated by the Department of Labor under the provisions of the Immigration Act, that a nonquota immigrant student "who engages in any business or occupation for profit, or who labors for hire, shall be deemed to have abandoned his status as an immigrant student, and shall on the warrant of the Secretary of Labor be taken into custody and deported," must be construed as applying to those who definitely give up their studies, and instead engage in business or work for profit or hire, but not to students, otherwise bona fide, who during their studies gain their maintenance and tuition by self-supporting labor.

The statute, however, requires that the immigrant seek admission "solely for the purpose of study," and the question arises whether his testimony, hereinabove quoted, that he expects, on graduation, "if possible, to remain here," does not reasonably permit the conclusion that his real purpose was to settle here by gaining entrance as a student. Standing alone, the statement might suffice therefor. Coupled, however, with the further answer, "Otherwise, I will return," and especially his unequivocal affirmation of intention to return to Italy on the completion of his studies, we are of the opinion that it is at best the proper expression of a hope that the laws may be changed during the three or four student years, so as to permit him to remain.

That hope and the intention, if it be realized, to remain here, does not evidence that he came with a purpose to stay, or justify the conclusion that he had any other purpose in coming than to secure the advantages of

an American college education after having received the diploma of the Italian technical institute at which he had spent eight years.

In our judgment there is nothing in the record before the Board of Special Examiners to sustain either the finding that he was not a bona fide student, coming here for the sole purpose of studying in an accredited institution, or the order of exclusion based thereon.

The order dismissing the writ of habeas corpus must therefore be reversed, and the relator directed to be discharged.

HAND, Circuit Judge (dissenting). I agree that I can have no purpose to sail to the moon, however much I might enjoy it; a plan involves some belief in the possibility of its execution. But I can purpose for the future what I know cannot succeed as things now stand. It seems to me that the board was justified in finding, not only from what the alien said, but from the fact that his father and brother were already here, that he believed he might be able to remain, and meant to do so if he could. That he wanted to do so is beyond dispute; I am willing to agree that he thought it unlikely that he would succeed. But nevertheless his arrival was a step, not only in his education, but in another plan, unpromising, it is true, but perhaps realizable before the time came when apparently he would have to return. So it seems to me he had a double purpose, or at least I can see how reasonable people might so conclude.