LIDA M. ROSS, COMPLAINANT, APPELLEE, *v.* CHARLES M. McCABE, COM'R., DEFENDANT, APPELLANT.

(*Nashville,* December Term, 1932.)

Opinion filed June 24, 1933.

M. W. EGERTON and FOWLER & FOWLER, for complainant, appellee.

ROY H. BEELER, Attorney-General, and EDWIN F. HUNT, Assistant Attorney-General, for defendant, appellant.

316

MR. JUSTICE McKINNEY delivered the opinion of the Court.

There is involved in this cause not only the validity but the construction of the Hall Income Tax Law, chapter 86, Acts of 1929.

The questions for determination were raised by demurrer, which the Chancellor overruled, but, in the exercise of his discretion, permitted the defendant to appeal.

The facts, as alleged in the bill, are as follows: On September 3, 1898, May 29, 1899, and March 23, 1905, certain trusts were established by a person other than complainant with the Central Trust Company of New York (now the Central Hanover Bank and Trust Company) as trustee, the income from which was to be paid to certain beneficiaries for and during their natural lives, complainant, Lida M. Ross, a resident of Tennessee, being one of the designated beneficiaries. The trust instruments vested legal title to the properties of the trusts in the trustee, and denied to the beneficiaries any rights of management or control or any right to change the trustee; prohibited any change in the terms of the trust or any assignment of principal or interest by a beneficiary; and the interest of a beneficiary was not represented by any negotiable or transferable certificate. All the properties of the trust are with the trustee in the State of New York, and have been since the creation of the trust. The bill alleges as follows:

"Your complainant as a beneficiary under the said trust received from the trustee by check payable to her order during the year 1929, the sum of $8452.40, and during the year 1930, the sum of $8388.40, and during the year 1931, the sum of $7041.14. Your complainant is not

fully informed as to the character of the investment from which the income was received and is, therefore, unable to aver that the type of security held by the trustee is exempt under the statutes of Tennessee and can only set forth the amount received by her which, as above stated, came in the form of a check from the trustee payable to her order."

Upon citation and a hearing, the defendant assessed complainant with the following taxes on said incomes, to-wit: for the year 1929, $481.79; for the year 1930, $444.11, and for the year 1931, $366.31. Complainant paid these sums under protest, and seasonably filed the bill herein to recover same.

Section 1 of the Act provides as follows:

"That beginning with the calendar year 1929, and for each calendar year thereafter to be computed from July 1 to July 1 of each year, an income tax to the amount of five per cent per annum shall be levied and collected on incomes derived by way of dividends from stocks or by way of interest on bonds of each person, partnership, association, trust and corporation in the State of Tennessee who received during any year income from the sources above enumerated, except as hereinafter provided."

This statute by plain and unambiguous language imposes a tax on incomes received from stocks and bonds by each natural person residing within the State. This applies to complainant. The fact that the income is received through the medium of a trustee rather than direct from the obligor is immaterial. The person who enjoys the benefits of the income is the party against whom the statute is directed. Were it otherwise, a person with a large income from stocks and bonds could evade the

tax by placing such securities in the hands of a foreign trustee. This construction is in no sense opposed by the decision of this Court in *Bank of Com. & Tr. Co.* v. *McCabe,* 164 Tenn., 591, 592-593. In that case it was said:

"The complainant is a Tennessee corporation, with its *situs* at Memphis. It is the duly appointed and qualified guardian and trustee of certain nonresident minors and beneficiaries, and as such received certain incomes on stocks and bonds, on which taxes were paid as stated above. There is no express language in the Act that taxes the incomes of nonresidents, or taxes incomes received by resident guardians or trustees, or other fiduciaries, for the benefit of nonresident wards or beneficiaries."

The conclusion announced in that case was as follows: "We hold, therefore, that the legislature did not purpose to tax nonresident beneficiaries and wards whose trustees and guardians reside in this State."

In this cause the tax was imposed upon a beneficiary residing within this State, which is just the reverse of the situation presented in the other case.

Since complainant paid this tax, it was incumbent upon her to show that the income was derived from real estate or tax exempt securities, as to which the statute has no application, but in this she has failed.

It is urged that the statute is unreasonable and arbitrary, in that it does not impose the tax on incomes from other sources. Article 2, section 28, of the Constitution contains this provision: "The legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed *ad valorem.*" In the passage of the involved statute the legislature was exercising a power expressly authorized by the Constitution.

■ It is insisted that the framers of the Constitution only intended to authorize a tax on income from such stocks and bonds as were subject to be taxed *ad valorem in this State.* The Constitution does not so provide. It simply empowers the legislature to impose a tax on income where the stocks and bonds from which the income is derived are not exempt from taxation. The Convention was considering the character or kind of stocks and bonds that could be taxed. There is nothing in the Constitution, or the Journal of the Convention, to even suggest that the question as to the *situs* of any particular stocks or bonds was raised or considered. The authorities with respect to the *situs* of intangible personal property for purposes of taxation are in conflict. The power of this State to tax *ad valorem* the stocks and bonds from which complainant derives her income is an undetermined one that is not involved in this controversy.

■ Again, it is contended by complainant that the imposition of this tax was a denial of due process of law within the protection of the 14th Amendment to the Federal Constitution, because the effect of the assessment is to subject property to taxation which is beyond the limits and outside the jurisdiction of this State.

It was ruled otherwise in *Maguire* v. *Trefry,* 253 U. S., 12, 64 L. Ed., 739, 750, in which case an income tax under the Massachusetts statute was sustained. What was said in that case has application in this cause, and we quote from the opinion as follows:

"The plaintiff in error is a resident of the state of Massachusetts, and was taxed upon income from a trust created by the will of one Matilda P. MacArthur, formerly of Philadelphia. The plaintiff in error, under the will of the decedent, was the beneficiary of a trust thereby

created. The securities were held in trust by the Girard Trust Company of Philadelphia. Those which were directly taxable to the trustee were held exempt from taxation in Massachusetts under the terms of the statute of that state. The securities the income from which was held taxable in Massachusetts consisted of the bonds of three corporations and certain certificates of the Southern Railway Equipment Trust. These securities were held in the possession of the trustee in Philadelphia. The trust was being administered under the laws of Pennsylvania. The supreme judicial court of Massachusetts held the tax to be valid. 230 Mass. 503, 120 N. E., 162.

"Of the nature of the tax the chief justice of Massachusetts, speaking for the supreme judicial court, said: 'The income tax is measured by reference to the riches of the person taxed actually made available to him for valuable use during a given period. It establishes a basis of taxation directly proportioned to ability to bear the burden. It is founded upon the protection afforded to the recipient of the income by the government of the commonwealth of his residence in his person, in his right to receive the income, and in his enjoyment of the income when in his possession. That government provides for him all the advantages of living in safety and in freedom, and of being protected by law. It gives security to life, liberty, and the other privileges of dwelling in a civilized community. It exacts in return a contribution to the support of that government, measured by and based upon the income, in the fruition of which it defends him from unjust interference. It is true of the present tax, as was said by CHIEF JUSTICE SHAW in *Bates* v. *Boston*, 5 Cush., 93, at page 99. "The assessment does not touch the fund, or control it; nor does it interfere with the trustee in

the exercise of his proper duties; nor call him, nor hold him, to any accountability. It affects only the income, after it has been paid by the trustee 'to the beneficiary.' '' ' ''

Counsel for complainant concede that this cause is an authority against them, but contend that the Supreme Court has by later decisions impliedly overruled it, and rely particularly upon the case of *Safe Deposit Trust Co.* v. *Virginia,* 280 U. S., 83, 74 L. Ed., 180. We do not so interpret the opinion in that case, and until the Supreme Court sees proper to overrule its former decision, we feel constrained to follow it.

In the cause under consideration it does not appear that the State of New York has the authority to impose an *ad valorem* tax upon the securities from which complainant's income is derived, or, if it has such authority, that it has exercised it. In fact, it does not appear that the trustee has paid any taxes in New York. In these circumstances it is but just that complainant should contribute the small portion of her valuable income which has been exacted in consideration of the protection and benefits which she receives as a citizen of this State.

Finally, complainant questions the validity of section 14, chapter 20, Second Special Session of the 1931 Legislature, which is as follows:

"That residents of Tennessee who receive income from trust estates located without the State of Tennessee, any portion of which is invested in securities, the income from which is taxable under this Act whether said trust estate be revocable or irrevocable, shall file with the Commissioner of Finance and Taxation, as part of his income tax return a sworn statement of the trustee, executor or other administrator of said trust estate showing what

322

portion of the total income received by such Tennessee resident from such estates was derived from securities, the income from which is taxable under this Act. And if such resident of Tennessee fails to file such sworn statement from the trustee, executor or other administrator, then he shall report for income taxation in the manner otherwise provided in the Act the entire amount of income received by him from such trust estate.

"Trust estates located in Tennessee shall not be required to pay tax under this Act on the income from securities held for the benefit of nonresidents of Tennessee, even though the moneys of the trust estate or any portion thereof shall be invested in stocks and/or bonds which would otherwise be assessable under this Act."

■ It is said that the duty imposed upon the resident beneficiary of the trust to file a sworn statement of the trustee, setting forth the character of securities in which the trust funds are invested, is one impossible of performance. In our opinion, the complainant is in no position to raise this question until she has made an effort to obtain such statement and failed. This is the only method by which the State can acquire this information, since it has no jurisdiction over the person of the trustee. If the resident beneficiary, who enjoys a substantial income from the estate, can absolve herself from liability by sitting supinely by without making any effort to ascertain the character of investment held by the trustee, then, as heretofore suggested, every resident owner of such securities can avoid the tax by creating a foreign trust, and the statute would become a dead letter.

■ Several reasons occur to us as to why this requirement of the statute is reasonable and valid. First, because the information can be obtained in no other man-

ner than that provided by the statute. Second, because the beneficiary, if prudent and diligent, will keep informed as to the character of securities in which the trustee is investing her funds. Third, we see no reason why such a reputable and responsible trustee as the Central Hanover Bank and Trust Company would withhold such information if requested by the beneficiary. Fourth, the beneficiary has a right to demand such information, and if refused has her legal remedy against the trustee.

In 26 R. C. L., 1387, it is said: "Where a trust relation exists between parties, the *cestui que* trust is entitled to a complete accounting from the trustee, in which all data in the trustee's accounts, which it is his duty to keep, should be furnished." This is elemental in the law of trusts. If the funds are invested in real estate or in tax exempt securities, a sworn statement to that effect by the trustee absolves the beneficiary from liability. On the other hands, if the funds are invested in stocks and bonds which are taxable under the statute, then complainant should pay the tax just as every other natural person in Tennessee pays who receives an income from nonexempt stocks and bonds.

We are satisfied that complainant would have furnished the required statement and obviated the trouble and expense of this litigation if, in fact, the securities held by her trustee were nontaxable.

For the reasons stated, the decree of the Chancellor will be reversed, the demurrer sustained, and the bill dismissed.