SANBORN *v.* McCANLESS, Com'r of Finance and Taxation, *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed February 5, 1944.

Rehearing denied March 4, 1944.

M. P. O'Connor and R. B. C. Howell, Jr., both of Nashville, for complainant.

Roy H. Beeler, Attorney-General, William F. Barry, Solicitor General, and Allison B. Humphreys, Jr., Assistant Attorney-General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

Mrs. Edith Tolles Sanborn, appellant here, filed a bill in the Chancery Court of Davidson County, to have a determination of the legality of the action of the defendant Commissioner in assessing for taxation under the Hall Income Tax Law, certain property of the appellant. The Attorney General was made a party under the direction of the Declaratory Judgments Statute. The Chancellor held that the assessment was legal and proper and from this action the appeal has been perfected.

Appellant is the beneficiary of the following Connecticut Trust, created by the will of her father:

"I give and bequeath to said The Naugatuck National Bank, its successors and assigns, the equivalent of Fifty Thousand ($50,000) Dollars in real and personal property, in trust and upon the following uses and trusts:

" '(a) To hold, manage and care for the same and collect the income therefrom.

" '(b) To pay over to my said daughter, Edith Tolles Sanborn, from the principle and income therefrom, a sum of money not in excess of Twenty-four Hundred ($2400.00) Dollars, in each year, so long as my said daughter shall live.' "

During the year 1938, which is the year for which the attempted assessment is made, appellant received a total income from this trust of $2,400, of which amount it is admitted, $1,739.74 was derived from income on stocks and bonds. The balance of $660.26 was derived from encroachment on the *corpus* of the trust and no tax is attempted to be levied on that amount.

It is insisted by the Commissioner that his authority to make the assessment and collect the tax on $1,739.74 is to be found in section 1123(28) of Michie's Code, 1123.-29 of Williams' Code, which is as follows:

"Residents of Tennessee who receive income from trust estates located without the State of Tennessee, *any portion of which is invested in securities, the income from which is taxable under this law whether said trust estate be revocable or irrevocable, shall file with the commissioner of finance and taxation, as part of his income tax return a sworn statement* of the trustee, executor or other administrator of said trust estate showing what portion of the total income received by such Tennessee resident from such estates was derived from securities, the income from which is taxable under this law. And if such resident of Tennessee fails to file such sworn statement from the trustee, executor or other administrator, then he shall report for income taxation in the manner otherwise provided in the law the entire amount of income received by him from such trust estate." (Emphasis ours.)

In upholding the validity of the Hall Income Tax Law and particularly the section quoted above, this Court has said:

"This statute by plain and unambiguous language imposes a tax on incomes received from stocks and bonds by each natural person residing within the state. This applies to complainant. The fact that the income is received through the medium of a trustee rather than direct from the obligor is immaterial. The person who enjoys the benefits of the income is the party against whom the statute is directed." *Ross* v. *McCabe,* 166 Tenn., 314, 317, 61 S. W. (2d), 479, 480.

In the case of *Ross* v. *McCabe,* the trust was created under the laws of New York, and the facts are identical with those of the case before us, except that it appears from the opinion that the legacy there subjected to taxation was not an annuity but income derived from property

held in trust. In that case, Mrs. Lida M. Ross had received varying amounts for the years of the assessment; $8,452.40 for the year 1929, $8,388.40 for the year 1930, and $7,041.14 for the year 1931.

 The appellant here is, under the provisions of the will above quoted, to receive $2,400 per year for life, without contingency or condition, and if the income from the trust property is insufficient, the trustee is directed to encroach upon the *corpus* to make up the fixed amount. Clearly this provision of the will creates an annuity.

" 'Income' is distinguished from 'annuity' in that 'income' means profits to be earned, the amount of which is not fixed or certain but is contingent on the amount of earnings, whereas an 'annuity' is a fixed amount directed to be paid absolutely and without contingency." 3 C. J. S., Annuities, Sec. 1, p. 1374.

██ If, therefore, income is to be distinguished from annuity, income is not an annuity, and an annuity is not taxable as income. "Annuities are taxable as personal property," 2 Cooley Taxation (4th Ed.), section 571, and upon assessment *ad valorem. Wilkin* v. *Board of Com'rs,* 77 Okl., 88, 186 P., 474; *Chisholm* v. *Shields,* 21 Ohio Cir. Ct. R., 231; *Wetmore* v. *State,* 18 Ohio, 77.

Denying the right to tax an annuity as income, the Supreme Court of the United States said:

"As held below, the bequest to Mrs. Whitehouse was not one to be paid from income, but of a sum certain, payable at all events during each year so long as she should live. It would be an anomaly to tax the receipts for one year and exempt them for another simply because executors paid the first from income received and the second out of the *corpus*. The will directed payment without reference to the existence or absence of income."

*Burnet* v. *Whitehouse,* 283 U. S., 148, 151, 51 S. Ct., 374, 375, 75 L. Ed., 916, 918, 73 A. L. R., 1534.

The distinction was drawn in Massachusetts, where there is one rate of taxation on annuities as such, and another on income generally, in a case which involved a trust providing for the payment of $250 per month *out of income,* and it was there held that the levy was to be made at the rate of the income tax, rather than that for annuities, the lesser rate, since the trust was payable on condition that profits were made on a principal sum and it was not payable in a fixed amount in any event. *Tirrell* v. *Commissioner of Corporations and Taxation,* 287 Mass., 464, 192 N. E., 77.

This distinction is clearly recognized and discussed with the citation of numerous authorities in our case of *Overton* v. *Lea,* 108 Tenn., 505, 526-538, 68 S. W., 250.

In passing the Hall Income Tax Law, which has to do solely with income from stocks and bonds, there was no reason for the Legislature to make a specific exemption of annuities, because annuities as such, have no necessary connection with income from stocks and bonds. Such income, when the stocks and bonds are not taxed *ad valorem,* is the limit placed by the Constitution on the authority of the Legislature to levy an income tax in Tennessee. Many annuities, besides the most numerous kind which are a by-product of insurance, have no relation to stocks and bonds. They are payable out of the *corpus* of an estate, from rents on real estate, or from the profits of a business, and would not be within legislative contemplation when passing an income tax law under limits fixed by the Constitution of Tennessee.

We have held that Appellant received an annuity under the will of her father as quoted above, and we think that

when this annuity comes into the jurisdiction of the taxing authorities of Tennessee, it is an entity and has lost the characteristics of the property from which it is derived. This is effectually the holding in the opinion of *Burnet* v. *Whitehouse, supra.* There is no authority under the provisions of our Constitution for the taxation of annuities as income.

It results that the decree of the Chancellor must be reversed and the assignments of error sustained. The case is remanded to the Chancery Court of Davidson County for the entry of a decree in accord with the prayers of the Original Bill.

### ON PETITION TO REHEAR.

Petition is filed and rehearing urged on three grounds, namely:

(1) That the Court erroneously said in its opinion that the Commissioner was undertaking to levy the tax herein under the authority of Michie's Code, section 1123 (28), and not under section 1123(1).

■ This, we think, is immaterial, as both these sections are a part of the codification of the so-called "Hall Income Tax Law" passed as Chapter 86, Public Acts of 1929, as amended by Chapter 20, Public Acts, 2nd Ex. Sess., 1931. Both the foregoing sections of the Code are identical with the corresponding sections of the Act as amended.

The parts of the two sections pertinent to the case before us, are as follows:

Section 1123(1): ". . . an income tax . . . shall be levied and collected on income derived by way of dividends from stocks, or by way of interest on bonds of each person . . . . in the state of Tennessee who received, or to whom accrued, or to whom was credited

during any year income from the sources above enumerated . . .''

Section 1123(28) : ''Residents of Tennessee who receive income from trust estates located without the State of Tennessee, *any portion of which is invested in securities, the income from which is taxable under this law whether said trust estate be revocable or irrevocable, shall file with the commissioner of finance and taxation, as part of his income tax return a sworn statement* of the trustee, executor or other administrator of said trust estate showing what portion of the total income received by such Tennessee resident from such estate was derived from securities, the income from which is taxable under this law. And if such resident of Tennessee fails to file such sworn statement from the trustee, executor or other administrator, then he shall report for income taxation in the manner otherwise provided in the law the entire amount of income received by him from such trust estate.'' (Emphasis ours.)

It is insisted for petitioner that on account of the language used in the former opinion, that the Court gave no effect to the levy of the tax on income that was ''credited'' and ''accrued,'' as well as to that which was ''received'' by the taxpayer.

A careful reconsideration of our former opinion discloses no merit in this proposition. We were following, and had cited the language of the opinion of *Ross* v. *McCabe*, 166 Tenn., 314, 317, 61 S. W. (2d), 479, 480. ''The person *who enjoys the benefits* of the income is the party against whom the statute is directed.'' This language includes not only one who receives, but also one to whom is credited or to whom accrues *income* by way of dividends on stocks or interest on bonds. And whether or not the

tax is levied on authority of section 1123(1) or 1123(28), or both sections together, our decision is the same as regards an attempted levy on the authority of either.

Petitioner, in his second proposition on petition to rehear, insists that the following statement from our former opinion is erroneous:

"The opinion of this honorable Court says: 'And we think that when this annuity comes into the jurisdiction of the taxing authorities of Tennessee, it is an entity and has lost the characteristics of the property from which it is derived.' "

Petitioner insists that Mrs. Sanborn, "since she was the beneficiary of an express trust which in plain terms required that she be paid, not only from the principal, but from the income thereof, that she became the owner of the equitable title to the taxable dividends and interest as the same accrued."

This statement overlooks entirely, the language of Mrs. Sanborn's father's will and the intermediate discretion of the trustees there granted. The incidence of the Tennessee tax is upon Mrs. Sanborn's interest *when* and not *until* the trustees have set that interest apart. It is then, and not before, that such interest is *credited* or *has accrued* and comes into the jurisdiction of the taxing authorities of Tennessee. The trustees have a number of legacies to provide and may pay Mrs. Sanborn out of the *corpus* entirely if they see fit and their obligation as trustees will be met so long as they pay her *the fixed sum of $2400 per year*. We cited the *Whitehouse Case* merely as illustrative of the legal character of annuities, not as determinative of their taxability or non-taxability under Tennessee Law. The Federal Income Tax Law may reach (under the XVI Amendment) income *from whatever*

*source derived.* It is significant, therefore, that despite this very broad authority, in the *Whitehouse Case* it was held that annuities were not taxable as income.

If they are not taxable as income under the Federal Law a *fortiori* they are not taxable under the very limited and restricted scope of the Hall Income Tax Law, which can be no broader than the Constitutional grant that the Legislature shall have power to tax income from stocks and bonds not taxed *ad valorem.*

Distinguishing the facts of the *Whitehouse Case* from the authority of *Irwin* v. *Gavit,* 268 U. S., 161, 45 S. Ct., 475, 69 L. Ed., 897, which was pressed to support the tax as income in the *Whitehouse Case,* Justice McReynolds delivering the Court's opinion said:

"*Irwin v. Davit is not applicable.* The bequest to Gavit was to be paid out of income from a definite fund. If that yielded nothing, he got nothing. This court concluded (in the case of *Irwin* v. *Gavit*) that the gift was of money to be derived from income and to be paid and received as *income* by the donee. Here (in the case of *Burnet* v. *Whitehouse*) the gift did not depend upon income, but was a charge upon the whole estate during the life of the legatee to be satisfied like any ordinary bequest." *Burnet* v. *Whitehouse,* 283 U. S., 148, 151, 51 S. Ct., 374, 376, 75 L. Ed., 916, 918, 919, 73 A. L. R., 1534.

Only two new authorities in support of the petition to rehear are presented for our consideration. They are *Heiner* v. *Beatty* (3 Cir.), 17 F. (2d), 743, and *Warner* v. *Walsh* (2 Cir.), 15 F. (2d), 367.

The case of *Heiner* v. *Beatty,* cited and relied on most strongly by petitioner, is so clearly distinguishable on the facts from the case before us, that a careful analysis makes it authority for the opinion rendered, rather than

for a modification or rehearing. In our opinion we cited the case of *Burnet* v. *Whitehouse, supra.* It is expressly said in the course of that opinion that *"Irwin* v. *Gavit* is not applicable." 283 U. S., 148, 51 S. Ct., at page 376, 75 L. Ed. at page 918, 73 A. L. R., 1534. The case of *Heiner* v. *Beatty* (3 Cir.), 17 F. (2d), 743, 744, cites as its sole and exclusive authority, *Irwin* v. *Gavit*:

"Moreover, the Supreme Court in construing a will, not unlike the one here in issue, in respect to liability for taxes, found its members not all of one mind; yet, we are constrained by the reasoning, illustrations and inevitable inferences found in the opinion of that court, as well as by its judgment, in *Irwin* v. *Govit*, 268 U. S., 161, 165-169, 45 S. Ct., 475, 69 L. Ed., 897, to hold that the moneys which came in to John W. Beatty, being income produced from a capital sum created specifically to produce it, was income within the meaning of the Revenue Act of 1918 and that his payment of the tax thereon assessed, being proper, cannot be recovered in this suit."

It follows, therefore, that the case of *Heiner* v. *Beatty, supra,* furnishes no authority for the case before us here, since we held that in the case of *Burnet* v. *Whitehouse, supra,* was the authority upon which we based the distinction to be drawn between "an annuity and an income from a trust fund."

The will under which the tax was levied in the *Heiner Case* created a trust entirely different from that created in the *Sanborn Case.* There, an annuity in language similar to that in the *Sanborn Case* was first created, but of this defining or creating clause, the Federal Court said in its opinion, *"If the will had stopped there . . . all payments made to him year by year would have been exempt from taxation."* The testator had added (17 F.

(2d), at page 743) a direction to the trustee to set apart a sufficient *corpus* to each annuitant "to produce by the clear net *interest* and *income*," etc. Thereby there was created a gift of income, not an annuity. The Court correctly, therefore, applied the rule of *Irwin* v. *Gavit, supra*, and not that laid down in *Burnet* v. *Whitehouse, supra*.

The case of *Warner* v. *Walsh*, incorrectly cited by petitioner as being reported in 15 F. (2d), 267, and which appears at page 367 of that volume, is not in point because it was an annuity created in lieu of dower, and which therefore being created in consideration of the forbearance to assert a valuable property right, is governed by different rules than those laid down for annuities which are mere bequests or gifts without consideration other than love and affection. It was there held merely that the case of *Irwin* v. *Gavit, supra*, did not apply, and in effect, the widow was in the same situation—so far as taxation was concerned—as if she had purchased an annuity from an insurance company. It is distinguishable from our present case because it involved *an uncertain amount of annual dividends* from stocks in a commercial corporation, and not the fixed sum of an annuity. In *Bettendorf* v. *Commissioner of Internal Revenue* (8 Cir.), 49 F. (2d), 173, 175, because the sum involved was held to be interest from stocks and bonds, and *not* an annuity, the amount was subject to income taxation. The court said in part in this regard:

"In pointing out the distinction between income and an annuity, in *Peck* v. *Kinney, supra* [2 Cir., 143 F., 76], the court said: 'There is this distinction between income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges; the

latter is a fixed amount directed to be paid absolutely and without contingency. *Ex parte McComb*, 4 Bradf. Sur., N. Y., 151, 152. "An annuity is defined as 'a stated sum, payable annually.' (*Pearson* v. *Chace*, 10 R. I., 455), or as 'a yearly payment of a certain sum, of money granted to another in fee, for life, or for years.' " ' "

Finally petitioner says:

"We are wholly unable to find any authority supporting the notion that annuities are so impervious to investigation by the taxing authorities as that otherwise taxable income when incorporated therein ceases to be taxable."

It is, of course, admitted that never since the adoption of the Constitution of 1870 and the passage of the various taxing statutes under its authority thereafter, has there been such an attempt to tax as is made in the present case. If there has been, petitioner has not called it to our attention. We are not at all surprised that petitioner finds no authority for or against this unusual procedure, any more than he would find authority to forbid the taxation of a "house" or a "horse" as income because dividends and interest from stocks and bonds had gone into the purchase money for those articles, which then become taxable as separate entities *ad valorem*. Mrs. Sanborn should not escape taxation on the annuity, but under our law it would be assessable to her *ad valorem* on January tenth next after its receipt.

In the case of *Home Insurance Co.* v. *New York*, 134 U. S., 594, 10 S. Ct., 593, 33 L. Ed., 1025, 1030, a tax was assessed on the franchise or business of the Company, which resisted payment of the tax on the ground that such tax was in effect on bonds of the United States, in which securities much of the capital of the company was

invested. Mr. Justice FIELD, who delivered the opinion of the Supreme Court of the United States, upheld the tax on the ground that the bonds, though a part of the capital assets, were integrated in the business and that the *business* was an entity separate and distinct from the parts, and that it was therefore within the power of the State of New York to lay a tax upon it. This, it seems to us, is the same principle which we have applied in the case before us, the sole difference being that in the one case the taxpayer has sought an exemption, which was disallowed, and in the present case a collector has sought to levy a tax which has been disallowed on *exactly the same ground*.

Finally, since petitioner here seeks to impose a tax, it is his duty and certainly not ours, to produce authority for his action. We have carefully read and re-read the petition to rehear, but fail to find any such authority, and have discussed those cited in the petition to show that they are not in point. It remains only to hold that this case seems to us clearly an attempt to extend by implication the taxing power conferred by the Constitution and the Hall Income Tax Law. There is very definitely a doubt of the authority, and that doubt, under all our authorities, is to be resolved in favor of the taxpayer and against the State.

"Revenue acts are not to be interpreted so as to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out, but are to be construed most strictly against the State and in favor of the citizen. *United States* v. *Merriam,* 263 U. S., 179, 44 S. Ct., 69, 68 L. Ed., 240, 29 A. L. R., 1547; *Smietanka* v. *First Trust & Sav. Bank,* 257 U. S., 602, 42

S. Ct., 223, 66 L. Ed., 391; *Gould* v. *Gould*, 245 U. S., 151, 38 S. Ct., 53, 62 L. Ed., 211; *State ex rel.* v. *Louisville & N. R. Co.*, 139 Tenn. [406], 412, 201 S. W., 738." *Bank of Commerce & Trust Co.* v. *McCabe*, 164 Tenn., 591, 593, 51 S. W. (2d), 850.

Petition to rehear is denied.