JOSEPH W. BETTENDORF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29158, 33635, 41419.   Promulgated January 31, 1930.

*Walter M. Balluff, Esq.*, and *E. B. McGuinn, C. P. A.* for the petitioner.

*Phillip M. Clark, Esq.*, and *C. C. Clark, Esq.*, for the respondent.

**OPINION.**

MURDOCK: The respondent disallowed the deduction of $5,000 as a loss on stock during the taxable year 1923 and based his action upon the ground that the loss was actually sustained in a prior taxable year. There is no evidence in the record as to this issue and it has apparently been abandoned. We approve the determination of the Commissioner as to this disallowance. *Gilbert W. Lee*, 8 B. T. A. 951; *Paul N. Myers*, 7 B. T. A. 1072; *Davis Co.*, 6 B. T. A. 281; *Volker* v. *United States*, U. S. Dist. Ct., W. Dist Mo., decided Nov. 20, 1929.

The petitioner claims that the dividends on the stocks enumerated in the contract of September 26, 1911, were the taxable income of Catherine Bettendorf and were returned as such, and that the action of the Commissioner in including such dividends in his income was wrongful. The respondent based his action upon the express terms of the contract of September 26, 1911.

The instrument signed by Catherine Bettendorf on September 26, 1911, conveyed the personalty described therein to the petitioner. Catherine Bettendorf, the mother of the petitioner, having inherited from her deceased son certain shares of stock, most of which were in in the Bettendorf Axle Co., discussed the disposition of such stock after her death with the petitioner. Although there had been no legal adoption of the cousin of the petitioner who had been living in the home of the petitioner's mother, both the petitioner and his mother felt that there might be some claim by the cousin upon her estate and to avoid such claim and to assure the petitioner that he would receive the stocks listed in the contract, the shares of stock were conveyed and actually delivered to him on September 26, 1911. The transfer was complete both as to the written instrument and the manual delivery of the stock certificates. The petitioner then had the stocks transferred to his name on the books of the several corporations, thereby placing such stocks under his absolute control. Thereafter, dividends were paid to the petitioner, since he was the stockholder of record, and he in turn paid his mother an amount equal to the amount of the dividends.

The instrument stipulates that "As a part consideration * * * J. W. Bettendorf is to pay to Catherine Bettendorf and M. Bettendorf the certain amounts as hereinafter stated and at the time hereinafter specified." The instrument then sets forth that the petitioner " will pay to Catherine Bettendorf * * * all earnings * * * paid to him on any or all of the shares of stock * * * as soon after their receipt by J. W. Bettendorf as is practicable." Upon the death of Catherine Bettendorf one-half of such earnings were to be paid to M. Bettendorf; there was no direction as to the other half, but the presumption is that the petitioner was to retain that half. The " obligation * * * to make such payment " ceased upon the death of both Catherine Bettendorf and M. Bettendorf. The instrument further permits the petitioner to convert or sell any or all of the stocks and in lieu of dividends on such stocks sold or converted, he was to pay " a sum equal to the rate of interest paid by savings banks on savings deposits in * * * Davenport * * * Iowa."

The only conclusion that we can reach regarding the income from the shares of stock conveyed to the petitioner by Catherine Bettendorf is that even though he paid this income over to his mother, he was first the recipient of that income and it is taxable as his income. In a similar case, *Alfred Le Blanc*, 7 B. T. A. 256, we said:

The petitioner was himself the stockholder and continued to own the stock. Notwithstanding the request to do so, he refused to give it to his son because he wanted to control its disposition, an important attribute of ownership. His

direct purpose was to augment his son's income for his part in the success of the corporation—not to make the son a stockholder, but to let him benefit, through the petitioner, by its earnings. The son received no dividends, because between him and the corporation there was no such relation as entitled him to a dividend. Only stockholders were entitled to dividends, and even although the amount was the same, his right to it was not derived from any of the considerations which apply to stockholders, but from a separate agreement with one other than the corporation. As between him and the corporation he had not even that inchoate interest in earnings which a stockholder has before dividend declared. All of the attributes and incidents of a stockholder were continued in the petitioner.

The significance and importance of this is clear when it is remembered that the individual stockholder taxpayer is freed from normal tax upon his dividends. This is upon the theory that, after all, the incidence of the corporation income tax is ultimately upon the stockholders, and Congress has to this extent lightened their tax burden. But it is hardly arguable that this legislative intent carried beyond the stockholders to anyone who might be collaterally or indirectly interested in the corporation's earnings. It is the stockholder who gets the dividend and he alone who may have the normal-tax credit.

See also *Ormsby McKnight Mitchel*, 1 B. T. A. 143; *Samuel V. Woods*, 5 B. T. A. 413; *Ella Daly King, Executrix*, 10 B. T. A. 698; *Arthur H. Van Brunt*, 11 B. T. A. 406; *Julius Rosenwald*, 12 B. T. A. 350; 33 Fed. (2d) 423; certiorari denied, 280 U. S. 77A; *Fidelity-Philadelphia Trust Co.*, 16 B. T. A. 1214; *Irene McFadden Winder, Executrix*, 17 B. T. A. 303; *Rensselaer & Saratoga Railroad Co. v. Irwin*, 239 Fed. 739; affd., 249 Fed. 726; certiorari denied, 246 U. S. 671; *Bing v. Bowers*, 22 Fed. (2d) 450; affd., 26 Fed. (2d) 1017.

*Judgment will be entered for the respondent.*