## SHELLABARGER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4220.

Circuit Court of Appeals, Seventh Circuit.
Feb. 28, 1930.

Charles C. Le Forgee, of Chicago, Ill., for petitioner.

John G. Remey, of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Beyond mention in its finding of facts that respondent's ground for such determination was that the payments to Georgia and the bank were in the nature of gifts, the Board's opinion makes no mention of this, but seems to predicate its conclusion upon the ground that the contract did not assume to give Georgia and the bank any right to demand and receive from the trustees of the two trusts any part of the net income therefrom, but could demand it only from Maud after she had received it from the testamentary trustees; also, that under the terms of the contract Maud did not completely deprive herself of that part of the income payable under the contract to Georgia and the bank, or give Georgia or the bank absolute control of the payments to them; but that in certain contingencies the rights of Georgia and the bank, under the contract, might terminate; and that Maud reserved some discretion in the making of certain payments by the bank to Georgia's children.

■ The renunciation of Georgia's right to contest the will was a lawful consideration for the contract, and the payments to her and the bank under the contract were in no sense gifts or payments in the nature of gifts. Page on Contracts, § 554.

The fact that in certain contingencies the contracted payments to Georgia and the bank might cease, and Maud might then be entitled to receive them for her own use, has no relevancy to the question here involved. This could happen only when conditions specified in the contract came to pass. Until then the right of Georgia and the trustee bank to receive half of the net income was absolute. The contract left no option of revocation in Maud, and no authority to withhold at will from Georgia or the bank and to take unto herself any of the net income so payable to them.

■ Income taxes look to the period for which they are imposed, and operate upon income accrued and paid to the taxpayer as income to the taxpayer within that period. That in some subsequent tax year conditions might come into existence under which Maud would again have for her own use a greater part, or even the whole, of the net income from the testamentary trusts, is wholly beside the question in determining her taxable income for the year 1924. In that year it appears that not only were Georgia and the bank lawfully entitled under the contract to demand and receive to their respective uses the half of the net income from these trusts, but they actually did so then receive it.

The bare fact that the entire net income from the trusts was first paid to Maud does not of necessity determine the question. An examination of the trust provisions of the will reveals an excellent reason why it would be paid to her. In both of the trusts it was provided that the income was "payable to her (Maud) on her sole and separate receipt therefor." This made it at least questionable whether the testamentary trustees were authorized in any event to make the payment to any one but Maud, or to give heed to any direction to pay to another any part of the net income; and this may serve to indicate why the contract omitted any direction to the trustees to pay the three-tenths and the one-fifth of the net income directly to Georgia and the bank; and it tends to dispel any inference that, under the terms of the contract, any power or control over the three-tenths and the one-fifth remained in Maud except to receive it and turn it over as in the contract specified.

■ The mere fact of Maud's receiving it does not indicate that it was her taxable income. The statute (Act June 2, 1924, c. 234, § 213[a], 43 Stat. 267) does not impose an income tax upon everything which is *received* by the taxpayer. Many items may be received which are not taxable income of the recipient. "Derive"—not "receive"—is the word the statute employs.

Under the contract, for the year in question Maud was but an instrumentality or agency for receiving and conveying to Georgia and the bank their contracted proportion of the net income. Maud could not convey the fund itself since she had no title to it. She did not direct the testamentary trustees to pay the half to Georgia and the bank, since the terms of the trusts seemingly required the payments to be made to Maud herself. She did all she reasonably could to invest Georgia and the bank with full right and title to the half.

As was said in Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 277, 58 L. Ed. 530: "They therefore used words of contract rather than of conveyance; but the important thing is not whether they used the present or the future tense but the scope of the contract. In this case it aimed only at the fund."

So in the case before us it is quite immaterial whether there was employed lan-

guage purporting to convey a half interest in the net income, or agreeing to pay over the half as it was received—the result is the same.

As the fund was paid over to Maud, the interest of Georgia and the bank immediately attached, and Maud became in equity a trustee for the benefit of Georgia and the bank. Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. And where the beneficiary of a trust assigns an interest in the income therefrom, the grantee who received the income pursuant to the agreement, and not the grantor, is liable for the federal income tax thereon. Young v. Gnichtel (D. C.) 28 F.(2d) 789; O'Malley-Keyes v. Eaton (D. C.) 24 F.(2d) 436. In any event, the valid agreement to pay as received half of the income of the trusts conferred an equitable lien on the fund when it came into existence. Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208.

While the whole of the net income from the trusts was physically received by Maud, the half did not accrue to her as her income, but on the instant of receiving it she held it in trust for Georgia and the bank, and it was in good faith paid over as received, pursuant to her valid and binding contract.

We think the Board of Tax Appeals erred in sustaining respondent's redetermination of petitioner's 1924 tax, and the order of the Board approving the redetermination of the tax is reversed, and the cause is remanded with direction for further proceedings in harmony with these views.