## BETTENDORF v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 8995–8997.

Circuit Court of Appeals, Eighth Circuit.
April 20, 1931.

Walter M. Balluff and Edmond M. Cook, both of Davenport, Iowa, for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge.

In this case three petitions have been filed to review three decisions of the Board of Tax Appeals, finding the petitioner liable for the payment of alleged income tax deficiencies for the years 1922 to 1926, both inclusive. The same issues are present in each case, and the cases have been submitted together.

The facts are not in dispute. The petitioner is an individual residing in Betten-

dorf, Scott county, Iowa. The Bettendorf Axle Company was organized in 1894 by petitioner and his brother, W. P. Bettendorf. On the death of the latter, on June 3, 1910, Catherine Bettendorf, as an heir of W. P. Bettendorf, received stock in the Bettendorf Axle Company and other corporations. For some years a cousin of the petitioner had been living with Catherine Bettendorf and had been employed in the Bettendorf factory. He had not been legally adopted, but the petitioner and Catherine Bettendorf, petitioner's mother, discussed the possibility of claims by the cousin upon her estate, and, to forestall such claims, a written contract was entered into as follows:

"Whereas, Catherine Bettendorf, of Bettendorf, Iowa, has sold, transferred and delivered to Joseph W. Bettendorf, of Bettendorf, Iowa, the following shares of stock and other personal property, viz., [Here appears a list of stocks, including stocks in the Bettendorf Axle Company.]

"And, Whereas, as a part consideration for such sale and transfer, said Joseph W. Bettendorf is to pay to Catherine Bettendorf and M. Bettendorf the certain amounts as hereinafter stated and at the time hereinafter specified. Therefore,

"Know All Men By These Presents, That Joseph W. Bettendorf does hereby agree by and with Catherine Bettendorf that during the life of Catherine Bettendorf the said Joseph W. Bettendorf will pay to Catherine Bettendorf, or her assigns, all earnings and dividends paid to him on any or all of the shares of stock, hereinbefore mentioned, except a stock dividend, which if declared shall be and remain the property of said Joseph W. Bettendorf. The said earnings so received by said Joseph W. Bettendorf shall be paid to Catherine Bettendorf, or her assigns, as soon after their receipt by Joseph W. Bettendorf as is practicable.

"Upon the death of Catherine, should her husband, M. Bettendorf, be surviving, said Joseph W. Bettendorf hereby agrees to pay one-half of the earnings and dividends received by him, as hereinbefore stated, to said M. Bettendorf, or his assigns, during his natural life.

"Upon the death of both Catherine Bettendorf and M. Bettendorf there shall be no further obligation on the part of Joseph W. Bettendorf to make such payments.

"It is agreed that if at any time there should be issued by any of the companies or corporations, the stock of which is included in the above and foregoing list, a stock dividend, or a dividend of stock, that such stock dividend shall become and forever remain the property of said Joseph W. Bettendorf and said Catherine Bettendorf shall have no interest therein further than to receive and have paid to her, or her assigns, such earnings or dividends as may be paid thereon.

"In the event that Joseph W. Bettendorf shall sell or otherwise dispose of any of the stocks included in the above and foregoing list of stocks (including the liquidation of any company or corporation whether voluntary or involuntary) said Joseph W. Bettendorf agrees to pay as often as practicable, and at least quarterly, to whom it is hereinbefore provided, earnings or dividends shall be paid, a sum equal to the rate of interest paid by savings banks on savings deposits in the City of Davenport, Scott County, Iowa, provided, however, that if the proceeds of the sale of any stock or stocks shall be invested by said Joseph W. Bettendorf in any other stocks, bonds, or in any other manner than in the savings account, the earnings arising from such sum or sums so invested shall be paid as hereinbefore provided, to said Catherine Bettendorf, or her assigns, or one-half thereof to M. Bettendorf, as hereinbefore provided.

"The agreement to pay earnings, dividends, income or interest, as hereinbefore provided to Catherine Bettendorf or M. Bettendorf is a part consideration for the sale and transfer of the aforesaid stocks to said Joseph W. Bettendorf by Catherine Bettendorf, and this contract shall be binding upon the heirs and assigns of said Joseph W. Bettendorf.

"In Witness Whereof said Joseph W. Bettendorf has hereunto set his hand this 26th day of September, A. D. 1911.
"[Signed] Joseph W. Bettendorf,
"[Signed] Catherine Bettendorf."

Pursuant to this contract, Catherine Bettendorf delivered the stock to the petitioner, which was transferred to his name on the books of the several corporations. None of the stock was converted or sold, except an exchange of the stock of the Bettendorf Axle Company for the stock of its successor, the Bettendorf Company, as of January 1, 1913. Petitioner received the earnings, in the form of dividends, from these stocks, and paid them over to Catherine Bettendorf, as provided in the contract, and Catherine Bettendorf included these earnings in her income tax returns and paid income tax thereon, but they were not included in the income tax returns of the petitioner, nor did he pay in-

come tax thereon. The Board of Tax Appeals held that the earnings from this stock were taxable to the petitioner as a part of his income, and the petitioner challenges the correctness of this decision.

In reaching its conclusion, the Board stated that the petitioner "was first the recipient of that income, and it is taxable as his income," and quoted from its decision in Alfred Le Blanc, 7 B. T. A. 256, in support of this conclusion. In the Le Blanc Case the petitioner was a stockholder, and continued to own the stock. He, however, assigned the income of the stock to his son, but refused to transfer the stock, and the Board held that not only the stock but the earnings belonged to the petitioner. In the instant case, at the time of the execution of this contract, Catherine Bettendorf was the absolute owner of these securities, and, as an incident to such ownership, she was entitled to all the earnings or dividends derived therefrom. By her contract, however, she transferred the legal title to the stock, but by the terms of this same contract she retained and reserved to herself the right to the income during her life. The income was therefore at no time that of the petitioner, because by the very contract under which he held the legal title he was bound to account to the donor for the income. The contract required that the petitioner account only for such income as accrued, and not for a specified sum. He was not chargeable personally with the income from the stock, except as and when it should be received by him, and hence the contract did not create an annuity in favor of Mrs. Bettendorf. Peck v. Kinney (C. C. A.) 143 F. 76, 80; Goodyear Shoe Machinery Co. v. Dancel (C. C. A.) 119 F. 692; Bartlett v. Slater, 53 Conn. 102, 22 A. 678, 55 Am. Rep. 73; White v. City of Marion, 139 Iowa, 479, 117 N. W. 254, 256; Nehls v. Sauer, 119 Iowa, 440, 93 N. W. 346.

In pointing out the distinction between income and an annuity, in Peck v. Kinney, supra, the court said: "There is this distinction between income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges; the latter is a fixed amount directed to be paid absolutely and without contingency. Ex parte McComb, 4 Bradf. Sur. (N. Y.) 151, 152. 'An annuity is defined as "a stated sum, payable annually" (Pearson v. Chace, 10 R. I. 455), or as "a yearly payment of a certain sum of money granted to another in fee, for life, or for years."' "

The Supreme Court of Iowa in Nehls v. Sauer, supra, defined an annuity as "a yearly sum, the payment of which is chargeable only upon the person of the grantor."

In White v. City of Marion, supra, the grantor conveyed to his son certain real estate by a deed in which he reserved to himself and to his wife, for their lives, the right of occupancy and rents from the property conveyed. It was contended that the reservation was an annuity. The court said: "We do not regard this as an annuity, and agree with the contention of appellee's counsel in this respect. * * * We are all agreed that plaintiff had no annuity."

The author of the article on annuities, 2 R. C. L. at page 4, says: "The grant of the income or interest of a certain fund to a beneficiary during the term of his natural life is not the grant of an annuity, but is simply a grant of profits to be earned, and although directed to be paid annually, such a direction relates only to the mode of payment, and does not change the character of the bequest. While an annuity is a fixed sum and is generally given absolutely, the income from a fund constituting net profits to be earned after the deduction of expenses may vary in amount from year to year, and so is necessarily uncertain."

The facts in the Board of Tax Appeals' decision entitled Hallahan v. Commissioner, 14 B. T. A. 584, bear a much closer analogy to those in the instant case than do the facts in the Le Blanc Case. In the Hallahan Case, the petitioner received title to the corpus, which was an interest in a partnership. The conveyance was on condition that he pay portions of the income to his father, and, after his father's death, to petitioner's mother and brother. The Board held that the income was taxable to the persons ultimately entitled thereto, and that the fact that the petitioner held legal title did not necessarily charge him with an income tax thereon. In the course of the opinion in that case it was said: "In these cases we have held the individual receiving the total income taxable on only the portion in which he individually had the beneficial interest, the portion paid his associate being merely received by him in trust for such party."

We should regard the substance rather than the form. The simple fact appears to be that the petitioner was, so far as the income from these securities was concerned, a trustee, a fiduciary, and not a beneficiary. The purpose of the income tax law was to tax incomes actually and substantially derived, rather than such as might be construc-

tively received. We must assume that it was not the purpose of the act to penalize an individual because he might be the innocent agency by or through whom a substantial income was derived for some one else. The government will not resort to sharp practice, nor invoke technical construction or fiction, which will manifestly thwart the good-faith intention of its taxpayers, for the purpose of visiting a tax burden upon one who in fact did not, except by construction, derive any beneficial income from the transaction. The income which petitioner received from these securities was not the income with which one pays debts. By this contract, Catherine Bettendorf made a gift of the securities, receiving nothing in exchange, but she retained, for the period of her own life, the right to the income. The petitioner, by the terms of the contract, assented to this reservation, and he thereby became a trustee, and was required to account to his mother for the earnings received. This court, in Edson v. Lucas, 40 F.(2d) 398, 405, sustained a gift of securities, subject to reservations by the donor as to the disposition and control of the stocks. In the course of the opinion in that case it was said: "It is safe to say that, where there is a complete transfer of the legal title to the subject-matter of the gift, together with some equitable or beneficial present interest, to the donee, without power of revocation in the donor, coupled with the intentional delivery of complete possession, dominion and control over the gift, the gift is not invalid because of conditions imposed by the donor which are not inconsistent with the immediate vesting of such legal title in the donee."

There were fewer restrictions and reservations attached to the gift in the instant case than in that referred to in the Edson Case. The stocks and securities here were delivered to the petitioner. He paid nothing therefor, but agreed to the reservations attached to the gift.

In Shellabarger v. Commissioner, 38 F. (2d) 566, 567, the Circuit Court of Appeals of the Seventh Circuit had before it a case which in its essential facts was very similar to the case at bar. In that case petitioner's father died testate, leaving as the only heirs at law two daughters, the petitioner, Maud, and Georgia. To Maud he gave outright $20,000, and to Georgia $100. Two trusts were created, one of $300,000, whereof Maud was given the net income during her life, and one of the residuum of the estate, the net income from which, after certain payments in-cluding $100 a month to Georgia during her life, was also given to Maud during her life. Georgia threatened to contest the will. The controversy was, however, settled by a written contract, whereby, in consideration of Georgia abandoning her threatened contest, Maud agreed to give her half of the $20,000 legacy, and as received to pay to her during her life three-tenths of the net income from the two trusts, the one-fifth to be paid to a bank as trustee for the use of Georgia's descendants. There was provision for reversion to Maud in case of Georgia's death leaving no descendants.

In her income tax return for 1924, Maud did not include that part of the income paid by her to Georgia and the bank. The Commissioner of Internal Revenue increased the net income on the ground that the payments to Georgia and the bank were in the nature of gifts, and this determination was sustained by the Board of Tax Appeals. On petition for review the court, in reversing the decision of the Board of Tax Appeals, among other things said: "The fact that in certain contingencies the contracted payments to Georgia and the bank might cease, and Maud might then be entitled to receive them for her own use, has no relevancy to the question here involved. This could happen only when conditions specified in the contract came to pass. Until then the right of Georgia and the trustee bank to receive half of the net income was absolute. The contract left no option of revocation in Maud, and no authority to withhold at will from Georgia or the bank and to take unto herself any of the net income so payable to them."

In the instant case, it is urged that the contract vested the petitioner with the absolute legal title to the securities, with power of disposition, and provided that, if he should sell, then he was to pay a sum equal to the rate of interest paid by savings banks, and this, it is contended, indicated that under certain contingencies the petitioner might be required to pay a sum equal to the rate of interest paid by savings banks, rather than the actual income from these securities. The short answer to this contention is that it has no relevancy to the question here, because the contingency has not arisen, and we are dealing only with actual income from these securities. As said in the Shellabarger Case: "Income taxes look to the period for which they are imposed, and operate upon income accrued and paid to the taxpayer as income to the taxpayer within that period. That in some subsequent tax year conditions

might come into existence under which Maud would again have for her own use a greater part, or even the whole, of the net income from the testamentary trusts, is wholly beside the question in determining her taxable income for the year 1924."

Again the court said:

"The bare fact that the entire net income from the trusts was first paid to Maud does not of necessity determine the question. * * * The mere fact of Maud's receiving it does not indicate that it was her taxable income. The statute (Act June 2, 1924, c. 234, § 213 [a], 43 Stat. 267 [26 USCA § 954]) does not impose an income tax upon everything which is received by the taxpayer. Many items may be received which are not taxable income of the recipient. 'Derive'— not 'receive'—is the word the statute employs.

"Under the contract, for the year in question Maud was but an instrumentality or agency for receiving and conveying to Georgia and the bank their contracted proportion of the net income. Maud could not convey the fund itself since she had no title to it. She did not direct the testamentary trustees to pay the half to Georgia and the bank, since the terms of the trusts seemingly required the payments to be made to Maud herself. She did all she reasonably could to invest Georgia and the bank with full right and title to the half. * * *

"As the fund was paid over to Maud, the interest of Georgia and the bank immediately attached, and Maud became in equity a trustee for the benefit of Georgia and the bank. * * *

"While the whole of the net income from the trusts was physically received by Maud, the half did not accrue to her as her income, but on the instant of receiving it she held it in trust for Georgia and the bank, and it was in good faith paid over as received, pursuant to her valid and binding contract."

We are in accord with the views expressed in the Shellabarger Case. Dividends from these securities, as soon as collected by the petitioner, were impressed with a trust in favor of his mother, and they were in fact paid to her. We are of the view that the Board of Tax Appeals erred in sustaining respondent's determination, and the order of the Board approving the determination is therefore reversed, and the causes remanded with directions for further proceedings in harmony with these views.