# CENTRAL LIFE ASSUR. SOC., MUT., v. COMMISSIONER OF INTERNAL REVENUE.

## No. 9134.

Circuit Court of Appeals, Eighth Circuit.
July 13, 1931.

Donald Evans, of Des Moines, Iowa (Richard S. Doyle, Charles D. Hamel and John Enrietto, all of Washington, D. C., Carr, Cox, Evans & Riley, of Des Moines, Iowa, and Hamel, Doyle, Park & Saunders, of Washington, D. C., on the brief), for petitioner.

A. G. Divet, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

STONE, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals sustaining the Commissioner in the redetermination of deficiencies in the taxes of the petitioner for the taxable years 1921 and 1923 to 1926, inclusive.

The petitioner presents here but one issue. That issue is whether the income covered by these deficiency assessments was truly the income of the petitioner, or was income of stockholders in a stock insurance company which petitioner was organized to take over.

The facts are as follows: The Central Life Assurance Society of the United States was a stock company under the laws of Iowa, doing a life insurance business on both the nonparticipating and the participating plans. The petitioner, Central Life Assurance Society of the United States (Mutual) is a mutual life insurance company organized to do only a mutual life insurance business. The latter company was organized for the purpose of taking over the assets and business and assuming the liabilities of the former. This was done by a contract of May 15, 1919. Provisions of that contract, here essential, are as follows. The purchasing company was to receive all of the assets and to assume all of the liabilities of the stock company with full power to collect premiums and

maintain the insurance of the stock company then in force. A further consideration from the purchaser was the payment to the then stockholders of the stock company of the earnings from the nonparticipating business thus conveyed. The provision of the contract covering this latter matter is as follows:

"That in further consideration of the transfers and promises of the Stock Company, the said Mutual Company agrees that it will pay to the persons hereinafter specifically mentioned, who are all the stockholders of the said Stock Company, in such proportions as are herein indicated, any earnings there may be for a period of twenty-two years from the date hereof, from the non-participating business hereby and hereunder transferred to such Mutual Company.

"For that the earnings from such nonparticipating business may be determined, the Mutual Company agrees that it will maintain a separate department for such business, in which department shall be shown:

"(a) The gain or loss from loading from such non-participating business.

"(b) The gain or loss from mortality from such non-participating business.

"(c) The gain or loss from interest earnings from such non-participating business.

"(d) The gain or loss from all other sources from such non-participating business.

"(e) Total surplus of non-participating department.

"That prior to February 15, 1920, and prior to such date in each year thereafter for a period of twenty-two years, the said Mutual Company shall make up a gain and loss exhibit, as of date January 1st of such year, in such department, and shall on February 15, 1921, and on February 15th of each year thereafter during such period, distribute all surplus, if any in excess of $100,000, as shown by such exhibit to the persons hereafter named, their heirs, personal representatives, or assigns, the whole amount to be distributed being represented by 2000 and the distribution to each person, his heirs, personal representatives or assigns so named being in the proportion that the amount set out opposite to his name herein bears to 2000."

The reserve of $100,000, stated in the last paragraph of the above quotation was set up at the suggestion of the insurance department of the state of Iowa as a reserve against excess liability upon the nonparticipating

policies. The period of twenty-two years was selected as the time within which it was estimated that the entire nonparticipating business would be liquidated through mortality, lapse, or otherwise.

In accordance with the above contract, the assets were conveyed and a separate department was maintained by the mutual company for the purpose of carrying out the above-quoted provision of the contract. The deficiencies covered by this controversy are the surplus earnings of the nonparticipating insurance which were paid over, under the above contract, to the stockholders of the stock company.

The issue here is whether those earnings constituted income of the petitioner, in a taxable sense, or were income of the stockholders. The contention of the petitioner is that it was a trustee of such earnings for the benefit of the stockholders.

Tax laws are essentially practical in their purposes and application, and the federal income tax laws are no exception. While, for purposes of convenience and certainty in collection of such taxes, it is sometimes provided that those who collect income for others shall pay therefrom the taxes thereon, yet a cardinal purpose of the income tax laws is to tax the income to the person who has the right or beneficial interest therein, and not to throw the burden upon a mere collector or conduit through whom or which the income passes. Shellabarger v. Commissioner, 38 F.(2d) 566, 567 (C. C. A. 7); Young v. Gnichtel, 28 F.(2d) 789 (D. C. N. J.); O'Malley v. Eaton, 24 F.(2d) 436 (D. C. Conn.); also compare U. S. v. Robbins, 269 U. S. 315, 327, 328, 46 S. Ct. 148, 70 L. Ed. 285; Kaufmann v. Commissioner, 44 F.(2d) 144, 146 (C. C. A. 3); Mitchel v. Bowers, 15 F.(2d) 287, 289 (C. C. A. 2). It is also a basic principle in the application of such laws that substance and not mere form be regarded as governing. Having the above principles in mind, it seems to us that the Board of Tax Appeals was in error in deciding that the above income was really and truly the income of petitioner. It is unnecessary to determine whether the relationship here is technically a fullclothed trust or is something else, although the facts here may well be held to establish a trust relation as to this income. Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. The undisputed fact is that the petitioner bound itself to pay to designated persons "any earnings there may be for a period of twenty-two years from the date hereof, from the non-participating business hereby and hereunder transferred," and that a method of determining those earnings, which is apparently fair and sincere and workable, is set forth in the contract. Also, that under such plan, the earnings of the nonparticipating business were segregated as much as the nature of the business would permit and were handled in a separate department organized and maintained for that purpose. These earnings never became the absolute property of petitioner, and it could lawfully do with them but one thing, which was to pay them over in accordance with the contract. It secured no beneficial interest whatsoever from them. There was as complete a segregation of these earnings as could possibly be made under the circumstances. The facts of this case are somewhat analogous to those in the Bettendorf Case, recently decided by this court in an opinion by Judge Gardner. Bettendorf v. Commissioner, 49 F.(2d) 173.

The order of the Board of Tax Appeals should be and is reversed, and the cause remanded, with instructions to enter an order sustaining the contention of petitioner and abating these taxes.