## PECK et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 349.

Circuit Court of Appeals, Second Circuit.

June 3, 1935.

J. Sterling Halstead, of New York City, for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The testatrix, Mrs. Peck, died on April 17, 1928. The Board of Tax Appeals determined deficiencies of $1,748.60 and $4,200.75 for the periods of January 1 to April 17, 1928, and April 18 to December 31, 1928, respectively. These deficiencies resulted from the commissioner's treatment of dividends paid during 1928 on certain shares of stock of F. W. Woolworth Company. The stock on which these dividends were paid had previously been lent by Mrs. Peck to a newspaper corporation, hereafter referred to as the Times; the certificates had been transferred to the Times on the books of the transfer agent, and it received the dividends in question. None of them was paid by the Times to Mrs. Peck or to her executors. The commissioner treated the dividends received by the Times prior to Mrs. Peck's death as income to her, and those received thereafter as income to her estate. The correctness of this treatment is the sole question presented. Mrs. Peck filed her income tax returns on the cash basis.

The terms upon which the stock was borrowed are set out in the two writings printed in the margin;* one of January 5,

* "Brooklyn, N. Y., Jan. 5, 1927.
"The Brooklyn Daily Times hereby acknowledges the receipt from Mrs. Carson C. Peck, of eighty-eight hundred (8,800) shares of the stock of F. W. Woolworth Co., certificates Nos. WO–43112/19, incl., W–15844/48 incl., W/20981, and W–20968/69, incl., which have been loaned to it by her, for its accommodation, and to assist it in financing and conducting its business; to be used as collateral or sold, as may be needed for temporary requirements; and, for value received, hereby agrees to return such stock to Mrs. Carson C. Peck, or replace it with an equal number of shares, on or before January 1st, 1931, or at any previous date, upon thirty days written demand.

"Any dividends declared on such stock, in the meantime to belong to her. In case the stock, or any part of it, is sold, the amount of the dividends that would have been received on such stock, if not sold, will be paid to her on January 1st, 1931, with interest from the date each such dividend would have been payable.
"The Brooklyn Daily Times
"John N. Harman, Vice-President."

"Brooklyn, N. Y., Jan. 2, 1928.
"The Brooklyn Daily Times, Inc., hereby acknowledges receipt from Mrs. Carson C. Peck of eight thousand shares of the stock of the F. W. Woolworth Co. certifi-

1927, relating to 8,800 shares, the other of January 2, 1928, relating to 8,000 shares. Referring to the language of the earlier agreement, it is apparent that the borrower was given the power to pledge or sell the shares, and undertook to return them, or an equivalent number, on January 1, 1931, or earlier upon written demand. As to shares sold, the borrower agreed to pay on January 1, 1931, the amount which would have been received as dividends if the stock had not been sold, together with interest from the date each such dividend would have been payable. For the amount of such dividends the borrower became a mere debtor. But as to dividends on shares not sold, the relation of the parties was different. Any dividends declared on the stock "in the meantime" (i. e., before its return) were "to belong to" the lender. Not only does this phrase indicate her right to have them as soon as they were received by the borrower, but the fact that no interest was provided for delayed payment, as in the case of dividends on sold shares, strongly supports the same conclusion. We think the Board was correct in holding that Mrs. Peck reserved the right to dividends on shares not sold and that the Times received such dividends in trust for her so that she was entitled to have them immediately paid over, and after her death her executors had similar rights. Hence they were properly included as income to her and her executors under section 162 (b) of the Revenue Act of 1928 (45 Stat. 838, 26 USCA § 2162 (b). See Bettendorf v. Commissioner, 49 F.(2d) 173 (C. C. A. 8); Shellabarger v. Commissioner, 38 F.(2d) 566 (C. C. A. 7); Morton v. Commissioner, 23 B. T. A. 930, affirmed 61 F.(2d) 1036 (C. C. A. 2).

The second agreement is not identical in wording with the first. It provides for the contingency of all or part of the shares to which it relates being "transferred." The petitioners do not suggest that this means transferred on the books of the Woolworth Company out of the name of Mrs. Peck. We understand it to refer to a transfer by the Times to some third party; it is the equivalent of "sold" in the earlier agreement. As to dividends on shares not transferred, the writing, unlike the earlier one, is silent. It cannot be supposed, however, that it was intended to make a gift of such dividends, since the borrower was bound to return not only the stock but also a sum equivalent to dividends on transferred shares. Nor can it be supposed that dividends on shares not transferred are to be treated the same as those on transferred shares, as to which the parties made express provision. The only alternative, and the reasonable interpretation of the writing, is that dividends on shares not transferred are to remain the lender's and be subject to her immediate demand upon receipt by the borrower. We conclude as did the Board that despite the difference in wording the meaning of the two agreements was the same.

The petitioners contend that the Board erred in excluding the income tax returns of the Times which were offered for the purpose of proving that its financial condition was such that the dividends it received were not available to Mrs. Peck or the petitioners. Whether the exclusion was erroneous we need not say, for it could not have been prejudicial. However hardpressed financially the Times may have been, the dividends it received on the borrowed stock were received in trust for the lender. As the Supreme Court has stated, "The test of taxability to the beneficiary is not receipt of income, but the present right to receive it." Freuler v. Helvering, 291 U. S. 35, 42, 54 S. Ct. 308, 311, 78 L. Ed. 634. Hence, even though Mrs. Peck reported on a cash basis, the dividends were taxable as income to her although not forthwith distributed. Helvering v. Schaupp, 71 F.(2d) 736 (C. C. A. 8).

Order affirmed.

---

cates numbered WO–43120/27, inclusive, which have been loaned to it by her for its accommodation and use in financing its business as may be needed for current requirements, and for value received, hereby agrees to return said stock to her, or if transferred, replace it with an equal number of shares on or before January 1st, 1933.

"It is further agreed that in case the stock or any part of it is transferred, the amount of the dividends that would have been received on said stock if not transferred, shall be paid to her on January 1st, 1933.

"The Brooklyn Daily Times, Inc.
"John N. Harman, Vice-President."