*Decision will be entered under Rule 50.*

WILLARD S. HEMINWAY AND ANABEL P. HEMINWAY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4706–62.    Filed April 23, 1965.

*John T. Sapienza,* for the petitioners.
*Stephen M. Miller,* for the respondent.

TRAIN, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1959 in the amount of $7,810.16.

The only issue raised by the pleadings is whether petitioners must include in, and then not deduct from, gross income the amount of dividends received during 1959 and paid over to his sister pursuant to an agreement with her.

FINDINGS OF FACT

Many of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioners reside in Rye, N.Y. They filed a timely joint Federal income tax return for 1959 with the district director of internal revenue, New York, N.Y. They were on the cash basis method of accounting and reported on a calendar year basis.

Willard S. Heminway (hereinafter sometimes referred to as Heminway) is, and since 1939 has been, the president of the Heminway & Bartlett Manufacturing Co. (hereinafter sometimes referred to as the company). The company is a family firm, founded by Heminway's grandfather and H. H. Bartlett, and incorporated under the laws of the State of Connecticut in 1888. About 1918, the Bartlett interest was purchased by the Heminway family.

On March 1, 1944, Heminway and four other employees made a loan to the company of $23,000 for which they received notes bearing 4-percent interest and maturing March 1, 1949, as follows:

| | |
|---|---|
| Heminway | $8,000 |
| Carlton W. Washburn | 5,000 |
| H. Hosking | 4,000 |
| Edward A. Reit | 4,000 |
| Joseph Glover | 2,000 |

On September 29, 1944, 920 shares of common stock were issued at their $25 par value in exchange for the $23,000 of notes referred to above, as follows:

| | *Shares* |
|---|---|
| Heminway | 320 |
| Carlton W. Washburn | 200 |
| H. Hosking | 160 |
| Edward A. Reit | 160 |
| Joseph Glover | 80 |

In August 1946, Heminway and his two sisters, Caroline Ladd (hereinafter sometimes referred to as Caroline) and Madeleine H. Holden (hereinafter sometimes referred to as Madeleine) received 415, 415, and 416 shares of the company's stock, respectively, as a distribution under the will of their father.

Throughout the winter and spring of 1946–47, Caroline expressed dissatisfaction with Heminway's management of the company and her failure to receive dividends on her stock. (The company had not paid a dividend since 1933.) She manifested an intention to force liquidation of the company if these factors were not remedied. She objected particularly to the transaction of September 29, 1944, in which the company had issued common stock at par value in exchange for the notes held by Heminway and other employees. Her specific objections to this transaction were that it diluted her interest in the company and that the consideration paid for the 920 shares (par value) was grossly inadequate. In June 1947, she offered to sell her 415 shares to Heminway for $250,000, or approximately $602.38 per share, and she threatened to bring suit if her offer were not accepted.

On June 23, 1947, Heminway telephoned Madeleine. He related the facts in the above paragraph, stated that he did not have a controlling interest in the company and requested her to assist him. Approximately 1 hour later, after considering his request, Madeleine called Heminway and agreed to sell to him 411 of her 416 shares of common stock at their par value, $25 per share, with the provision that when, as, and if the company declared dividends on these shares, she would receive such dividends for the shorter of (a) her life or (b)

Heminway's life plus 5 years. On June 24, 1947, Heminway sent Madeleine a letter, which read as follows:

This letter will confirm my verbal arrangement with you that when, as, and if The Heminway & Bartlett Mfg. Co. declare and pay a common dividend you, but not your heirs, shall receive from me the full amount of dividends upon the four hundred and eleven (411) shares of common stock which you sold me on June 23, 1947.

In the event of my death, I am leaving a letter in my safe deposit box to Anabel [Heminway's wife] instructing her to continue paying your dividends as per above arrangement for five years after my death.

Your loving brother,

BILL.

Received by me on June 25th, 1947 and approved.

MADELEINE H. HOLDEN.

Heminway also mailed his personal check in the amount of $10,275 pursuant to the above agreement.

At Madeleine's request, Heminway sent her a letter dated December 22, 1954, altering the provisions contained in the June 24, 1947, letter by stating that he would pay her the dividends declared on such shares for the remainder of her life, rather than for the shorter of her life or Heminway's life plus 5 years. The letter read as follows:

Dear Madeleine:

Supplementing and referring to my letter to you of June 24, 1947, and as per your recent request, this letter will serve to amend the last paragraph of mine of June 24, 1947, in which I state "In the event of my death, I am leaving a letter in my safety deposit box to Anabel, instructing her to continue paying you dividends as per above arrangement for five years after my death."

It shall be understood from this date on that I am leaving a letter in my safety deposit box to Anabel instructing her to continue paying you dividends as per above arrangement for the remainder of your life, in the event of my death prior to your death. This is by no means written as a lawyer would write it, but it certainly must cover the point and intent.

I will be talking to you soon on the telephone.

Love,

BILL.

WSH: db
Mrs. Robert Holden
429 Montgomery Avenue
Haverford, Pa.

On July 23, 1947, the 411 shares mentioned above were transferred on the company's books and were thereafter registered in Heminway's name. By virtue of this purchase, Heminway acquired a controlling interest in the company as owner of 1,213 of the 2,236 shares of common stock outstanding.

On June 25, 1947, the stockholders of the company, at a special meeting, authorized the company to reacquire the 920 shares of common stock that had been issued on September 29, 1944, and to reissue the company's notes in the amount of $23,000 (equal to the aggregate

par value of the 920 shares at $25 per share) at 4-percent interest with maturity at March 1, 1949. The reacquisition of the 920 shares and the reissuance of the notes took place on June 25, 1947, following the special stockholders meeting. After this transaction, petitioner was the record owner of 893 of the 1,316 shares of common stock outstanding.

Heminway's financial position in June 1947 was such that it would have been difficult or impossible for him to raise enough money to pay the full value for either Madeleine's or Caroline's shares. The book value of said shares was $128.24 per share on June 23, 1947, and 2 days later rose to $217.89 per share as a result of the company's reacquisition of the previously mentioned 920 shares. The fair market value of the shares in question greatly exceeded their par value of $25 per share.

On March 16, 1950, the company redeemed and retired the 415 shares of stock held by Caroline for $100,000 or approximately $240.96 per share. The book value of the company's common stock on this date was approximately $369.34.

On or about December 15, 1953, the company issued a common stock dividend of 10 shares on each share of common stock then outstanding. Following this stock dividend the number of shares of the company subject to the agreement of June 23, 1947, was increased from 411 to 4,521.

From 1949 through 1959, Heminway included the full amount of dividends received by him on stock registered in his name as gross income on his Federal income tax returns, and claimed a deduction from gross income for the amount of dividends he remitted to Madeleine pursuant to the agreement of June 23, 1947.

From 1949 through 1959, Madeleine included the full amount of dividends received by her from Heminway as dividend income on her Federal income tax returns.

In 1959, the company declared dividends of $3.25 per share of common stock and paid to Heminway an aggregate amount of $25,918.75 on the shares of common stock registered in his name.

In 1959, Heminway paid to Madeleine $14,693.25, pursuant to the agreement of June 23, 1947, as amended by the letter of December 22, 1954. He took a deduction of $13,562 for the dividends he remitted to Madeleine. The discrepancy between the amounts of deduction and remittance was due to Heminway's error in adding the amounts he paid to Madeleine.

Heminway has always remitted to Madeleine all of the dividends received by him on the shares held by him pursuant to the agreement of June 23, 1947, as amended by the letter of December 22, 1954.

Madeleine retained a life interest in the dividends (other than stock dividends) to be paid by the company with respect to the stock she sold to Heminway.

OPINION

The sole issue for decision is whether dividends from the company, which were received by Heminway in 1959 and paid over to his sister Madeleine pursuant to their agreement, are taxable to and not deductible by him. Heminway contends that Madeleine retained the right to receive these dividends as part of the agreement, so that he is not taxable on them.[1] Respondent contends that Heminway is the legal and beneficial owner of the dividends, and that his agreement to pay over future dividends was either an anticipatory assignment of future income or constituted a part of the purchase price for Madeleine's stock.

The basic issue here is not whether or how the dividends in question are to be taxed but rather to *whom* they are to be taxed. Whether Heminway is taxable on the dividends depends upon the capacity in which he received them. The facts are basically undisputed; respondent challenges only their interpretation and legal effect. We believe that this case is squarely controlled by the decision in *Bettendorf* v. *Commissioner*, 49 F. 2d 173 (C.A. 8, 1931),[2] and that Heminway was either a fiduciary for or an agent of Madeleine and is not taxable on the dividends he received, since he did not derive any income therefrom.

In *Bettendorf* the taxpayer's mother transferred stock in a family corporation to him to forestall claims against her estate by a cousin. An agreement entered into by taxpayer and his mother provided that he would purchase her stock and pay over to her or her assignees all earnings and dividends paid to him, with respect to such stock as soon as possible after their receipt. If his father survived his mother, one-half of the dividends and earnings were to be paid over to the father for life. The stock was delivered to the taxpayer and his name recorded on the corporate books. He paid over all of the dividends he received to his mother, who reported and paid tax on them. Taxpayer did not report or pay tax on the dividends. In rejecting the Commissioner's contention that the taxpayer was taxable as the creator of an annuity, the Court of Appeals stated, at page 175:

In the instant case, at the time of the execution of this contract, Catherine Bettendorf was the absolute owner of these securities, and, as an incident to such ownership, she was entitled to all the earnings or dividends derived therefrom. By her contract, however, she transferred the legal title to the stock, but by the terms of this same contract she retained and reserved to herself the right to the income during her life. The income was therefore at no time that of the petitioner, because by the very contract under which he held the legal title he was bound to account to the donor for the income. The contract re-

---

[1] Petitioner concedes that it would have been technically correct to have excluded the dividend from gross income.

[2] This case, reversing 18 B.T.A. 959 (1930), and *Shellabarger* v. *Commissioner*, 38 F. 2d 566 (C.A. 7, 1930), reversing 14 B.T.A. 695 (1928), have been followed and cited with approval consistently by this Court.

quired that the petitioner account only for such income as accrued, and not for a specified sum. He was not chargeable personally with the income from the stock, except as and when it should be received by him, and hence the contract did not create an annuity in favor of Mrs. Bettendorf. * * *

The court stated further, at pages 175–176:

We should regard the substance rather than the form. The simple fact appears to be that the petitioner was, so far as the income from these securities was concerned, a trustee, a fiduciary, and not a beneficiary. The purpose of the income tax law was to tax incomes actually and substantially derived, rather than such as might be constructively received. We must assume that it was not the purpose of the act to penalize an individual because he might be the innocent agency by or through whom a substantial income was derived for some one else. The government will not resort to sharp practice, nor invoke technical construction or fiction; which will manifestly thwart the good-faith intention of its taxpayers, for the purpose of visiting a tax burden upon one who in fact did not, except by construction, derive any beneficial income from the transaction. The income which petitioner received from these securities was not the income with which one pays debts. By this contract, Catherine Bettendorf made a gift of the securities, receiving nothing in exchange, but she retained, for the period of her own life, the right to the income. The petitioner, by the terms of the contract, assented to this reservation, and he thereby became a trustee, and was required to account to his mother for the earnings received. * * *

The statements in *Bettendorf* are equally applicable here. Heminway received the dividends as either a trustee or agent for Madeleine and in fact paid them over to her. Though he *received* them, he *derived* no income from them within the purview of section 61(a) of the 1954 Code. *Shellabarger* v. *Commissioner*, 38 F. 2d 566 (C.A. 7, 1930) ; *Fremont C. Peck et al., Executors*, 31 B.T.A. 87 (1934), affd. 77 F. 2d 857 (C.A. 2, 1935). The fact that the beneficial right to the dividends was retained by Madeleine is supported by the testimony of the parties as to their intentions and by the objective facts. See also *Michael Fay et al., Executors*, 34 B.T.A. 662 (1936) ; *Ruth W. Collins*, 14 T.C. 301 (1950) ; *Fellow Sales Company* v. *United States*, 200 F. Supp. 347 (D. S. Dak. 1961). The treatment accorded to the dividends by both Heminway and Madeleine since 1949 is consistent with Heminway's contentions herein. As the beneficial owner she is liable for, and has paid, the tax imposed on the amounts paid over by Heminway, as dividends, and not as capital gains incident to the sale of her stock. Cf. *Vermont Transit Co.*, 19 T.C. 1040 (1953).

Respondent's principal contention, that the right to receive dividends cannot be severed from the "bundle of rights" which comprise a share of stock, does not further our inquiry. It is true the corporation could pay dividends only to Heminway as the shareholder of record, Conn. Gen. Stat. Ann., sec. 33–356(a) (1958), and that Heminway did receive them; but, as we have found as a fact, he

received them as either an agent or a fiduciary and did not *derive* income from them. *Shellabarger* v. *Commissioner, supra.* Respondent's statement that Heminway was the only person entitled to receive the dividends and thus is taxable thereon, is a conclusion which does not follow from its premise, for no tax is imposed upon the receipt of a dividend in a fiduciary or agency capacity. Respondent's conclusion that Heminway was the beneficial owner of the shares is not supported by the facts in this case. Similarly, respondent's attempt to analogize the Connecticut statutory proscription on the corporate issuance of fractional shares or fractional interests in its shares falls short of its mark. We fail to see the similarity between the retention of a dividend right for life by the seller of shares (to be paid over to her by the buyer), and the issuance of fractional shares by a corporation.

Respondent further argues that—

To permit taxpayers to contract away the inherent dividend rights incident to the beneficial ownership of a share of stock is to open up one more area of tax avoidance. Especially is this true in the case of close corporations, for were this device allowed to flourish, it would be a simple matter to shift the incidence of taxation on that member of the family on whom the tax is least. It is no different than the anticipatory assignment of future income, regardless of type, which has continually found disfavor with the Courts. * * *

Again respondent misconceives the instant situation. The dividend rights were not contracted *away*, they were *retained*, by Madeleine. Cf. *Edith R. Wood*, 27 B.T.A. 1308 (1933), affd. 74 F. 2d 78 (C.A. 6, 1934). There is no anticipatory assignment of future income since it is the tree and not the fruit which is being sold. Cf. *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958); *Lucas* v. *Earl*, 281 U.S. 111 (1930); *Helvering* v. *Horst*, 311 U.S. 112 (1940); *Helvering* v. *Eubank*, 311 U.S. 122 (1940). The retention of an income interest in property transferred makes the income taxable to the holder thereof even if payment is made through an agent or fiduciary. See *Central Life Assur. Soc., Mut.* v. *Commissioner*, 51 F. 2d 939 (C.A. 8, 1931); *Fellow Sales Company* v. *United States, supra; Ruth W. Collins, supra; Michael Fay et al., Executors, supra.*

Respondent's contention that payment over of the dividends by Heminway to Madeleine constituted part of the purchase price of her stock is contrary to both the intention of the parties and to the facts. We are convinced that Madeleine did not sell her entire interest in the stock, the premise upon which respondent's argument is founded and without which fact it founders. Cf. *Victor A. Lambert*, 20 B.T.A. 443 (1930); *Frithiof T. Christensen*, 33 T.C. 500 (1959). The fact that she reported the receipt of all dividend payments from Heminway as dividends rather than as capital gain from the sale of her stock further corroborates Heminway's argument. We are satisfied

that Madeleine retained a life interest in the dividends paid by the company in 1959. Though it was received by Heminway, he derived no income therefrom because he was obliged to pay over to Madeleine the amount received.

Because various items have been abandoned or conceded,

*Decision will be entered under Rule 50.*