## Duvall's Appeal

*L. A. Talone*, Deputy Attorney General, for Commonwealth.

*Charles E. Munn*, and *Herbert H. Hawkins*, for appellant.

CORSON, J., April 28, 1938.—Appellants, makers of a joint personal property return, have appealed from the assessment of a four-mill tax upon the capitalized value of what the Commonwealth alleges to be an annuity held by Geraldine B. Duvall. It is the contention of appellants

that the so-called annuity is not taxable as an annuity, but that the monthly payments to Mrs. Duvall are paid under a contract of insurance and not as an annuity.

In November 1937, one Frank Brown died, leaving a widow, Geraldine Brown, now Duvall, she having since married Wilbert A. Duvall. During his lifetime, Frank Brown took out three insurance policies, in the total principal amount of $75,000. Mrs. Brown, now Mrs. Duvall, was named as beneficiary in each of the three policies. These policies provided, taken together, that the beneficiary should receive a monthly income of $263.25 so long as she should live after the death of the insured. No choice was left to the beneficiary as to how the moneys were to be paid and she could only receive the proceeds of the policies in monthly instalments during her lifetime. It was also provided, however, that in the event the beneficiary should die before the time of her life expectancy under the mortality tables, any balance of the insurance fund should be paid to the brother of the insured or to the estate of the beneficiary.

After the death of the insured, Mrs. Brown apparently turned over the insurance policies to the insurance company and received what has been called an income certificate, certifying that she was entitled to receive monthly payments as provided by the policies for the balance of her life. The Commonwealth contends that this income certificate is an annuity and therefore taxable under the State Personal Property Tax Act of June 22, 1935, P. L. 414, as reënacted by the Act of May 18, 1937, P. L. 633. This act of assembly enumerates as taxable certain classes of personal property, including the principal value of all annuities.

Life insurance policies and the proceeds are not expressly mentioned among the subjects of taxation under this act and it would, therefore, appear that if the payments are being made as proceeds of life insurance policies and not as an annuity, such proceeds so payable are not taxable.

See Taxation of Life Insurance Policies (opinion of Attorney General), 17 Pa. C. C. 183.

In the case of Carroll v. Equitable Life Assurance Society of United States, 9 Fed. Supp. 223, the court said, inter alia:

"An examination of the authorities does not warrant the conclusion that an annuity contract is an insurance contract. It may be defined as 'a yearly payment of a certain sum of money granted to another in fee for life or for years, and charging the person of the grantor only.' 2 R. C. L., §1, p. 2. The granting of such contracts is not limited to insurance companies. . . .

"An annuity contract might be granted by an insurance company or any other corporation or individual for a certain period.

"In such case, the death of the annuitant would in no way become involved. Even a mortality table would not be consulted. The annuity contract is almost the reverse of an insurance policy. In the insurance contract, the assured pays the premium, in consideration whereof the company agrees to pay a stipulated sum upon his death. In an annuity, the annuitant pays a stipulated sum, and thereafter annual payments are made to the annuitant."

Since an annuity may be either for a term of years or for life, the mere fact that the payments in the present case are for life is not controlling. Let us assume that instead of payments for life, the insurance contract provided that the beneficiary or her estate should receive monthly payments over a period of years. Under the contention of the Commonwealth, this would be an annuity. We feel, however, that such payments could only be treated as a payment of an insurance contract in instalments. It would seem to be the contention of the Commonwealth that since Mrs. Brown, now Duvall, received what is called an income certificate from the insurance company, that constitutes the annuity agreement between the company and appellant.

With this contention we cannot agree. There was no new contract or agreement entered into between the beneficiary and the insurance company. The beneficiary gave up nothing; she received nothing except what it had been provided that she should receive by the insured in his insurance agreement with the insurance company. The so-called income certificate is merely evidential of what the beneficiary was entitled to receive under the policies. The beneficiary of these policies might have kept the policies in her possession as evidence of what she was entitled to receive under them. However, after the death of the insured most of the provisions in such policies were no longer in effect and the only parts in which the beneficiary or the company were then interested were those parts which provided for the monthly payments to the beneficiary.

It would seem to be perfectly natural under such circumstances for the insurance company to receive the policies and to give to the beneficiary a certificate covering that part of the policies, and the only part of the policies in which the beneficiary was interested. Certainly the evidential certificate cannot be treated as a new contract between the beneficiary and the company, but merely as a means of evidencing and carrying into effect that provision in the insurance policies providing for the payment of the proceeds of the insurance policies to the beneficiary in monthly instalments.

The Commonwealth relies upon the cases of Wilkin v. Board of County Commissioners of Oklahoma County, 77 Okla. 88, and Wetmore v. The State of Ohio, 18 Ohio 77. In the Wilkin case, the court said:

"In the case at bar there is a specific sum stipulated to be paid periodically at stated times for a term of years; *and by the term of the contract between the parties* the sum to be paid constitutes a personal obligation chargeable against the insurance company, which is not payable out of any specific fund. . . .

"It is evident, therefore, that the certificates were accepted *in lieu of* the money due on the matured policies and that the payments provided for constituted a direct charge against the insurance company, which was not payable out of any specific fund." (Italics supplied)..

In the Wilkin case, it would appear that the parties entered into a new contract and, in lieu of the one payment provided under the policies, entered into a new contract providing for payments over a period of years. This is entirely different from the present case where appellant merely received the payments in the manner and amounts provided under the policies. In the Oklahoma case the court relied upon the case of Chisholm v. Shields, etc., 21 Ohio C. C. 231. The Chisholm case, however, was reversed on appeal (see 67 Ohio 374, 66 N. E. 93), in 1902, long before the Wilkin case was decided in Oklahoma.

We do not think the Wetmore case, supra, controls. The court in that case seems to admit that the interest taxed was not an annuity in the technical sense of the word, but that it was included in the word "credits" under a statute. The Supreme Court of Ohio, in the Chisholm case, would seem to nullify the Wetmore case when the Supreme Court said: "The case seems to have been meagerly argued, and the controlling questions entirely overlooked."

For the reasons given, we feel that the payments to Mrs. Duvall are merely payments to her in instalments of the proceeds of an insurance policy taken out by Mr. Brown for the protection of his wife after his death, and do not constitute an annuity within the meaning of the Personal Property Tax Act of the Commonwealth.

And now, April 28, 1938, for the reasons given, the appeal is sustained, the order of the Pennsylvania Department of Revenue, dated September 1, 1937, is reversed, and the assessment complained of is directed to be canceled.